May Term,
1856.

Quick and Another *v.* White-Water Township.

QUICK
*v.*
WHITE-
WATER
TOWNSHIP.

By the school law of 1855, the amount derived from taxation for distribution for school purposes, must be distributed with the school funds therein specified.

Upon general principles, and where there is no constitutional restriction, the power of the legislative department is complete, and its discretion uncontrollable, in disposing of the revenues of the state.

The constitution requires that the interest derived from the congressional township fund, shall be distributed to or remain with the congressional townships alike unequally as the fund is itself unequal as between such townships.

By the constitution, the proceeds of the entire common school fund (of which the congressional township fund is to be considered in the distribution a part) are so to be distributed as to produce equality and uniformity in the school system throughout the state.

The proceeds of said fund, other than the interest on the congressional township fund, must, therefore, under the constitution, be unequally distributed, in order to produce the equality required by the constitution in the final result.

If two provisions of a constitution are irreconcilably repugnant, that which is last in order of time and in local position, shall be preferred.

The school law of 1855 conforms to the spirit of the constitution, in the mode of distributing the school fund among the several civil townships.

The school law of 1855 does not conflict with any act of congress, as it does not undertake to vary the distribution of the congressional township fund from the conditions of the grant.

*Wednesday,*
*June* 11.

APPEAL from the *Franklin* Circuit Court.

PERKINS, J.—Complaint, and prayer for an injunction restraining the auditor and treasurer of *Franklin* county from distributing the school fund, in said county, in accordance with the provisions of the school law of 1855. The complaint is by *White-Water* township, who, as plaintiff, says, that she was the owner of section sixteen in said township—a congressional township—and, in 1836, sold the same for 7,423 dollars and 36 cents, which sum has since been administered so that the interest has been applied to the support of common schools in the township. The complaint then proceeds—

"And the said plaintiff alleges that the annual sum collected for distribution for school purposes in said township, of the interest accrued on the said fund, up to the 3d *Monday* of *May*, 1855, amounts to the sum of 435 dollars and 17 cents, which last-named sum is in the hands

May Term,
1856.

QUICK
v.
WHITE-
WATER
TOWNSHIP.

and custody and under the control and management of the defendants to this complaint.

"And the plaintiff complains that said congressional township remained, under the law of the state, a body corporate and politic, until the passage of the school law of *June* 14, 1852, by the general assembly of *Indiana*, entitled 'an act to provide for a general and uniform system of common schools and school libraries, and matters properly connected therewith,' when the corporate powers of the said congressional township were repealed, and the said plaintiff, by virtue of the general laws of the state, was erected into a body corporate and politic; and the plaintiff avers that the geographical limits of the said *White-Water* township, in *Franklin* county, are identically the same with those of said congressional township number nine, range number one, &c.; and that the inhabitants of said *White-Water* township (the plaintiff herein) are the owners of said congressional township fund, and are, for the present year, ending on the 3d *Monday* of *May*, 1855, entitled to distribution among them of said sum of 435 dollars and 17 cents, for common school purposes in the said township.

"And said plaintiff further shows that, as nearly as can be ascertained, and taking the report of the superintendent of public instruction of this state, of *January* 19th, 1855, as the basis of the estimate, there are in said *White-Water* township, six hundred and eight children legally entitled to distribution of the school fund, and that thus the *per capita* distribution of said sum of 435 dollars and 17 cents, among said children in said township, for the current year, as aforesaid, amounts to a fraction over 71 cents, out of said congressional township fund.

"And said plaintiff further shows, that by an act of the general assembly of the state of *Indiana*, approved *March* 5, 1855, entitled 'an act to provide for a general system of common schools, the officers thereof, and their respective powers and duties, and matters properly connected therewith, and to establish township libraries, and for the regulation thereof,' it is provided in the 97th section thereof, as

May Term,
1856.

QUICK
v.
WHITE-
WATER
TOWNSHIP.

follows, to-wit: 'The state superintendent shall annually, by the fourth *Monday* in *April*, in each year, make out a statement, showing the number of scholars in each county of the state, the amount of the income of the common school fund in each county for distribution, the amount of taxes collected for school purposes, and shall apportion the same to the several counties of the state, according to the enumeration of scholars therein, without taking into consideration the congressional township fund, in such distribution.' And also in the 101st section thereof, as follows, to-wit: 'The treasurer of the several counties shall annually, on the 3d *Monday* of *May*, make distribution of the income of the common school fund, to which his county is entitled, (upon the warrant of the county auditor,) to the several townships and incorporated cities and towns of the county, which payment shall be made to the treasurer of each township, and in making said distribution, the auditor shall ascertain the amount of the congressional township fund belonging to each city, town and township, and shall so apportion the income of the common school fund as to equalize the amount of available funds in each city, town and township, as near as may be, according to the number of scholars therein: provided, however, that in no case shall the income of the congressional township fund,' &c., 'be diminished by such distribution, and diverted to any other township.'

"And the plaintiff further shows, that the common school fund, as fixed and defined by law, consists of the congressional township fund, and the lands belonging thereto; the surplus revenue fund; the saline fund, and the lands belonging thereto; the bank tax fund, and the fund arising from the 114th section of the charter of the state bank of *Indiana;* the fund derived from the sale of the county seminaries; and the fines assessed for breaches of the penal laws of the state; and from all forfeitures which may accrue; all lands and other estate which shall escheat to the state for want of heirs or kindred entitled to the inheritance; all lands that may be granted to the state, when no special purpose is expressed in the grant,

and the proceeds of the sales thereof, including the proceeds of the sales of the swamp lands; and taxes that may be assessed on the property of corporations, for common school purposes; and that said common school fund does not embrace in any way the general school tax levied by the laws of this state, and that such tax is therefore not a part of the common school fund of the state.

May Term,
1856.

QUICK
v.
WHITE-
WATER
TOWNSHIP.

" And the plaintiff avers that the said attempted legislation of the general assembly of *Indiana*, and particularly the sections of said act of *March* 5th, 1855, and the proposed plan of distributing the general tax levied for common school purposes, are, as plaintiff is advised, in contravention of the act of congress under which the plaintiff holds said common school fund derived as aforesaid from the sale of said section sixteen, of township nine, range one, &c., and also that the same are in contravention of the constitution of the state of *Indiana*, and are therefore void."

The complaint further shows that the defendants, the auditor and treasurer, are about proceeding to equalize among the townships, under the law of 1855, the sum appropriated to *Franklin* county for common schools. It then proceeds—

" And the plaintiff avers that by reason of the near approach of the period of distribution by said defendants, and also for the reason that when said distribution shall be made, an irreparable wrong will be inflicted on the plaintiff, that the present proceeding is a case of emergency, in which notice can not safely be given to said defendant, as in other cases; and the plaintiff prays your honor for an injunction in this case, to be granted forthwith, on the plaintiff's complying with such terms as the Court may prescribe, directed to said defendants, strictly enjoining them from any such distribution of the money arising from the general common school tax, and from the common school fund, or any part thereof, as will in anywise diminish to the plaintiff the full amount due the plaintiff on a fair and equal *per capita* division and distribution of the whole of said tax fund, and part of the com-

May Term,
1856.

QUICK
v.
WHITE-
WATER
TOWNSHIP.

mon school fund aforesaid, without in anywise regarding said congressional township fund, or making the said proposed illegal effort to equalize such congressional township fund throughout the county. And will your honor adjudge the distribution to be made in conformity with this complaint and the prayer of the plaintiff, and grant all other suitable relief in this behalf."

A temporary injunction was granted. On appearing, the defendants demurred to the complaint. The Court overruled the demurrer, and adjudged that said defendants should be restrained "from making any distribution of the said tax, and of the proceeds of the common school fund aforesaid, which would diminish to said plaintiffs their full share thereof, at the rate of 72 cents to each and every child in said township, entitled to share in such distribution; and that the said defendants, in making their distribution of said tax, and the proceeds of said fund, in said county, do allow and distribute to the plaintiffs their full share thereof, as if there was not any congressional township fund in existence. And it is further considered that the plaintiffs recover of the defendants their costs in this behalf. And the said defendants pray an appeal to the Supreme Court, which is granted by agreement of parties, without bond."

It is shown, in a part of the complaint not here set out, that if the sum appropriated out of the state funds to *Franklin* county, is distributed without reference to the township fund, it will give, out of that sum, 72 cents to each child in *White-Water* township entitled, &c.; but if distributed upon the principle of equalization, under the statute, it will give to each a less sum than 72 cents; in short, that if the law of equalization is not regarded, each child in *White-Water* township will draw 71 cents from the congressional township fund, and 72 cents from the state fund, making, from both, 143 cents; while, on the other hand, if equalization under the statute is carried out, each child in said township will receive from the two sources but 109 cents.

Sufficient of the complaint has now been embodied in

this opinion, to present the questions to be decided. The point of it may be briefly re-stated thus: The congress of the *United States* gave the sixteenth section of land in each township in this state, to the inhabitants, respectively, of the townships, for the support of common schools. The sections were of unequal value, and, on sale, produced unequal amounts, even relatively to the number of scholars in the respective townships. They did not, therefore, constitute an equal and uniform school fund, producing uniform privileges of education; but the legislature could not differently distribute the fund, because of the terms of the grant of the sections. *The State* v. *Springfield Township, &c.*, 6 Ind. R. 83.

The state also possessed a number of funds which she devoted to common school purposes, and her legislature was vested with a taxing power, by which it could add to the funds so appropriated.

Under these circumstances, the legislature enacted that the sums of money arising annually from these latter sources, should be just as unequally distributed in the townships of the several counties, as was the interest on the congressional township fund, but in inverse order, so that the aggregate amount, from the two sources, viz., the congressional township fund and the appropriations on the part of the state, distributed in each township, should, relatively to the number of scholars therein, be equal.

And the main question raised and argued by counsel, is, could the legislature enact such a law? Is the enactment constitutional?

The act, so far as it is objected to, makes an appropriation of money from the state treasury to the several counties of the state, to be distributed among the townships of those counties in a certain manner, and to be expended in supporting common schools. The act does not (as perhaps it might) attempt to apply to counties the principle applied to townships in distribution.

The money appropriated for such distribution, is derived from two sources, viz., taxation, and interest upon funds devoted by the state to common school purposes. It is

May Term,
1856.

QUICK
v.
WHITE-
WATER
TOWNSHIP.

contended, it is true, that the sum derived from taxation is not directed to be distributed with the interest upon the named funds, and, in terms, it is not; but we think, taking the whole statute together, that such is the fairly implied intention of the legislature.

Upon general principles, the power of the legislative department is complete, and its discretion uncontrollable, in the disposition of the revenues of the state. A treasury seems to be regarded as a necessary element in the constitution of, at least, a respectable state or nation. 1 Kent, 189. Without money a government is powerless. Possessed of it, its legislature expends it, as to time, place, and manner, according to the exigencies of occasions, being answerable only to the electors, the people. And if no provision of our constitution interferes, as that constitution, measurably abandoning (whether wisely or unwisely, it is not for us to say) the voluntary system, has made the education of the children of the state a public duty of the state, the legislature may appropriate money for that purpose, to different counties, as it may deem their respective wants require.

We know of no provision of the constitution controlling the distribution of that part of the moneys in question, derived from taxation, unless it be the one requiring laws for the support of common schools to be uniform. We do not say that that provision is applicable to such a case as this. But if it is, it must be conceded that it also applies with equal force to the distribution of the interest on the permanent funds.

And, as to this interest, it may be that the sections of the constitution requiring it to be distributed for the use of schools in the several counties, taken by themselves, might fairly imply that it should be appropriated among them by some fixed rule of equality; but the implication would not reach to the distribution among the townships. Article 8, ss. 3, 4, 5 and 6. Those sections, however, can not be construed by themselves. They form a part of the 8th article, which, being devoted to one subject, all of its sections must be construed together. Regarded thus, we

May Term,
1856.

QUICK
v.
WHITE-
WATER
TOWNSHIP.

find that the whole section designates what then existing matters should constitute the common school fund, naming such as were appropriated by the state, and also a certain trust fund, viz., the congressional township, donated by congress to be thus used; 6 Ind. R. 83; which aggregate fund, it is declared, may be increased, but not diminished. We find it further ordains that the interest accruing on all the parts of this fund shall be distributed by law among the several counties of the state, for the support of common schools, but that the interest on one part, viz., the congressional trust fund, shall be distributed according to the terms of the gift, and that, by the use of all these means, including, of course, the power of taxation, the legislature shall "provide by law for a .general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all."

We find, then, as the result of .this investigation, that the constitution requires—

1. That the interest on the congressional township trust fund shall be distributed, or remain with the townships, alike unequally as the fund itself exists unequally in the townships. But,

2. That the proceeds of the whole of the common school fund, of which, as we have seen, the congressional township is to be considered, in distribution, a part, are to be so distributed as to produce equality and uniformity in the school system throughout the state; and, as a necessity, therefore,

3. That the proceeds of said fund, other than the interest on the congressional township fund, must be unequally distributed, in order to produce the equality required by the constitution in the final result. Instead, therefore, of the prohibition of, we find a command for, an unequal distribution of the school fund, other than the congressional portion of it.

And, should the point, heretofore briefly alluded to, now be pressed, that the law violates that section of the constitution requiring laws to be uniform on this subject, a point on which we intimate no opinion, it will be a suffi-

cient answer to say that that section is, locally and in time, anterior to the sections of the educational article in that instrument above epitomized, and, hence, if irreconcilable with, is so far abrogated by them. If the different sections can not be "liquidated" and made to stand together, it is a "rule of construction, not derived from positive law, but from the nature and reason of the thing," "as consonant to truth and propriety," "that the last in order of time shall be preferred to the first." Federalist, No. 78.—*Spencer* v. *The State*, 5 Ind. R. 41. The school law in question conforms to the spirit of the constitution, in the manner of distributing the school fund among the townships of the several counties of the state. Perhaps the same principle is required, by the organic law, to be applied to the distribution among the counties themselves.

The law does not conflict with any act of congress, as it does not assume to vary the distribution of the congressional township fund from the conditions of the grant.

STUART, J., dissented.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. Morrison*, for the appellants.

*G. Holland* and *J. D. Howland*, for the appellee.