# Williams, Judge *v.* Schwarz.

### Prohibition.

(Decided May 25, 1916. Rehearing denied June 30, 1916. 72 South. 330.)

**Municipal Corporation; Officers; Recall.**—Section 14, Acts 1911, p. 345, is void as violative of § 175, Constitution 1901, since the act fixes the term of office at three years, and the additional phrase "until his successor is elected and qualified" does not have the effect to make the term indefinite or uncertain, nor does § 14 operate upon the term to cut it down to an indefinite or unfixed term, but operates only upon the individual commission.

(Sayre, Gardner and Thomas, JJ., dissent.)

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Petition by the State on the relation of Lazarus Schwarz, for a writ of prohibition to restrain the Honorable Price Williams as judge of probate from examining into or finding the qualification of the signers to the petition, and from taking any action under the petition looking to the calling of an election to recall petitioner as a member of the Mobile City Commission. From a decree awarding the prohibition the Probate Judge appeals. Affirmed.

YERGER & FOSTER, for appellant. STEVENS, McCORVEY & McLEOD, for appellee.

MAYFIELD, J.—This appeal presents for decision the question whether or not section 14 of the statute creating a commis-

sion form of government for the city of Mobile (Acts 1911, p. 330), is violative of section 175 of the Constitution of 1901.

The statute creates the office of commissioner, and fixes the term of office at three years, "and until the successors are elected and qualified." Section 14 thereof then provides the term of office so fixed, by an election to be held for such purpose. The evident effect of this provision is to afford the opportunity and means of removing an incumbent during the term to which he has been elected, without any cause, except that the majority of the voters do not then desire that he shall continue to hold the office.

Section 175 of the Constitution, so far as here applicable, reads as follows: "Mayors, intendants, and all other officers of incorporated cities and towns in this state may be removed from office for any of the causes specified in section 173 of the Constitution, by the circuit or other courts of like jurisdiction or a criminal court of the county in which such officers hold their office, under such regulations as may be prescribed by law; provided, that the right of trial by jury and appeal in such cases shall be secured."

Section 173 of the Constitution enumerates the causes for removal as follows: "Willful neglect of duty, corruption in office, incompetency, or intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude while in office, or committed under the color thereof, or connected therewith, etc."

A majority of the court are of the opinion, and hold, that the office of commissioner, created by the statute, is within the protection of section 175 of the Constitution; and that, the statute fixing the term of office at three years, an incumbent cannot be removed from office during the term for which he is elected, by recall or otherwise, except by the mode and in the manner, and for the causes, fixed in the constitutional provisions above quoted. It therefore follows that section 14 of the statute in question is void and of no effect, and that appellee cannot be removed from office by recall, the mode here attempted to be invoked, as provided in that section of the statute.

The case made by this record is the same in legal effect as that made in *Nolen's Case,* 118 Ala. 154, 24 South. 251, and the two cases are not distinguishable. If Moore could not be removed

from office except by impeachment, as provided by section 175 of the Constitution, then Schwarz cannot be removed except by the same mode and in the same manner. When Moore was elected to office, there was in force a statute authorizing the Governor to remove him and appoint a commissioner in his stead. Therefore the statutes fixing his term and providing for his election, and the one authorizing his removal, must all be construed together and as if constituting but one statute. So construing them, the court held that he could not be removed except by impeachment, because the Constitution provided the only mode of removal of such officers during the term for which they were elected. There can be no doubt that the statute in question fixes the term of office at three years and provides for the filling of the office by election and otherwise; and, when a person is elected or appointed to the office for that term, then the Constitution says that he may not be removed by the mode of recall. The Constitution and the statute are therefore clearly in conflict, and, of course, the Constitution controls. The inhibitions of the Constitution must be read into all statutes; and, when so read into the statute in question, they render inoperative the recall provisions of the statute.

The phrase, "until his successor is elected and qualified," has been often construed, and held not to add any additional time to the term fixed, nor to make the term in the least indefinite or uncertain. If this recall provision were valid, then the Legislature could provide for the recall of all county and municipal officers, and all other officers, if the term of the office be not fixed by the Constitution. It was the evident purpose of our Constitution to prevent just such legislation as this. If it was not so intended, then the provision serves no purpose and is a dead letter.

This case and *Nolen's Case* are clearly distinguishable from *Touart's Case,* 173 Ala. 453, 56 South. 211. In that case, there was no term of office fixed or even named in the Constitution, the statutes, or the order appointing the incumbent. The decision was put solely on the ground that there was no term of office fixed, and consequently no removal was necessary; but in this case, and in *Nolen's Case,* the statute did fix a term of three years, and then attempted to provide a mode of removal different from that provided and guaranteed by section 175 of the Constitution. In the opinion in *Touart's Case,* it was attempted to

distinguish that case from cases life the one at bar, and *Nolen's Case.* In that case it was said: "When a person is appointed to an office the term of which is not fixed by law, he is then and ever after regarded as holding subject to the will of the apppointing power; and this, upon the theory that the power of removal is incident to the power of appointment; and when he is removed he is not thereby deprived of any vested right or function, because the very condition of his appointment was that he could be removed at the pleasure of the appointing power."—173 Ala. 464, 56 South. 211.

The court in that case expressly declined to decide whether the Governor could remove an incumbent who was appointed for a fixed period, but under a statute which authorized the Governor to remove with or without cause; and so declined, because no such case was presented. The statute now under discussion presents that very question, except that it provides that the incumbent shall be elected instead of appointed, and may be re-elected instead of appointed, and may be removed by a vote of his constituents, rather than by the Governor; and this difference cannot affect the result.

The case of *Thomas v. Gunter,* 170 Ala. 165, 54 South. 283, does not uphold the constitutionality of the act in question, nor preclude the respondent, Schwarz, from invoking section 175 of the Constitution. In the act involved in the *Thomas Case, supra,* the Legislature had the right to do what was done, that is, to change the term of office, except that such change could not be made to affect an incumbent whose term had not expired; but, as both Thomas and Brown assumed office after the term was shortened they could not invoke sections 68 and 150 of the Constitution, which were intended to protect incumbents. There, the Legislature had the right to shorten the terms, just as it could have done here, and, if Schwarz had taken the office after the term was shortened, he could not complain. But the act in question does not deal with the term, as it is for a fixed period and remains the same regardless of how often the incumbent may be recalled. It merely provides for a removal of the incumbent before the expiration of the term—which violates section 175 of the Constitution as decided in the *Nolen Case, supra.* It is true that it was suggested in the opinion in the *Thomas Case* that sections 68, 150, and 174 were intended to apply only to incumbents, but the citation of 174 in connection with the other two sections was inapt,

as that case did not involve a law removing an incumbent before the term expired. It merely shortened the term, which the Legislature had the right to do, and one who took the office after the term was so fixed could not complain of the action of the Legislature. Here, the Legislature did something which the Constitution forbids, as it provided for the removal of an incumbent during the term for which he was elected, and did not deal with the term.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.

THOMAS, J.— (dissenting).—This appeal is taken by Price Williams from a judgment prohibiting him, as judge of probate of Mobile county, from finding the qualifications of the signers to the petition, filed under the provisions of the commission government act, seeking the recall of relator as a commissioner of the city of Mobile.

In 1911 that city adopted the commission form of government, pursuant to the act of 1911 (Gen. Acts, pp. 330-355), which act is still effective. At the first election held for commissioners, Lazarus Schwarz was elected for the long term expiring on the 30th day of September, 1914. Thereafter, on October 1, 1914, he was elected commissioner for a term alleged in his petition for prohibition not to expire until the 30th day of September, 1917.

The petition for recall, filed with said probate judge on October 20, 1915, purported to be signed by qualified voters of the city of Mobile, and by more than 25 per cent. of the votes cast at the last city election wherein a commissioner for the city of Mobile was elected. On receipt of this petition, it was incumbent on the probate judge, under the provisions of the act, to ascertain the qualifications of the signers thereof, and to otherwise fully discharge his duties as required by the act relative to the recall of a commissioner. Relator filed his petition (which is now before us) to prohibit said judge of probate from considering said petition for recall, as required by the provisions of the act. After answer, the writ was granted and an appeal was taken to this court. Error is here assigned on the ruling of the court. Thus the constitutionality of section 14 of the commission government act is presented for decision.

The commission government act was an innovation in municipal government in this state; and its several provisions are set

forth in 33 sections. The office of commissioners, the periods of
incumbency therein, and the elections therefor, are provided for
by sections 4 and 10. The provision for "recall" is found in sec-
tion 14, and that for filling vacancies in sections 15 and 27. Ap-
pellant's contention is: "That section 14 of the act of 1911, being
the 'recall section' of said act, does not in any way conflict with
section 175 of the Constitution, now invoked by appellee as ren-
dering void the recall section of the Commission Government
Act. Under the cases of *Nolen v. State, ex rel. Moore,* 118 Ala.
154, 24 South. 251, *Hawkins v. Roberts,* 122 Ala. 130, 27 South.
327, and *Touart v. State, ex rel. Callaghan,* 173 Ala. 453, 56 South.
221, it is clear that if relator, on his election as a member of the
board of commissioners of the city of Mobile, for the term of
three years, under the act of April 8, 1911, became vested with
the tenure of the office for the term of three years, then relator
could be removed from such office only by proceedings as pre-
scribed by section 175 of the Constitution."

Appellee insists that a definite and fixed term of three years
is declared by the act; that, on relator's election as commissioner,
he became vested with the tenure of office. That is to say, that
section 14 of the act is contrary to the provisions of sections 173
and 175 of the Constitution. Statutory construction is governed
by principles long established. More than a century ago, that
eminent jurist, Chief Justice MARSHALL, announced a rule of
interpretation in cases involving alleged conflicts between stat-
utes and Constitutions, which has ever since commanded the
respect of the courts. In *Fletcher v. Peck,* 10 U. S. (6 Cranch)
87, 3 L. Ed. 162, he declared that whether a law be void for its
repugnance to the Constitution is, at all times, a question of
much delicacy, "which ought seldom, if ever, to be decided in the
affirmative, in doubtful cases;" that it is "not on slight implica-
tion and vague conjecture that the Legislature is to be pro-
nounced to have transcended its powers, and its acts to be con-
sidered as void. The opposition between the Constitution and
the law should be such that the judge feels a clear and strong
conviction of their incompatibility with each other." This lan-
guage has been quoted from in whole or in part in the many cases
collected in vol. 1, Rose's Notes on U. S. Repts. 390, 392; and was
adopted by Mr. Justice ORMOND in *Owen, et al. v. Branch Bank
of Mobile,* 3 Ala. 258, 262.

In *Inland Fisheries v. Holyoke Water Power Co.,* 104 Mass.
449, 6 Am. Rep. 247, Mr. Justice Gray, for the court, declared

that unlses the repugnancy of the statute to the Constitution "is manifest and unavoidable," the enactment must be upheld (*Dartmouth College v. Woodward*, 4 Wheat. 518, 625, 4 L. Ed. 629; *Norwich v. County*, 13 Pick. [Mass.] 60; and in *Sweet v. Rechel*, 159 U. S. 393, 16 Sup. Ct. 43, 40 L. Ed. 188, the case of *Fletcher v. Peck, supra*, is cited, and by the court it is said: "If a statute may or may not be, according to circumstances, within the limit of legislative authority, the existence of circumstances necessary to support it must be presumed."

In *United States v. Fairchild*, 1 Abb. 76, Fed. Cas. No. 15,067, it was held that the case must be "so clear that no reasonable doubt can be said to exist." To the like effect was the rule stated in *George v. Concord*, 45 N. H. 437. Chief Justice Sharswood said that "to doubt is to resolve in favor of the constitutionality of the act."—*Commonwealth v. Butler*, 99 Pa. 535.

In *State, ex rel. Meyer v. Greene*, 154 Ala. 249, 254, 46 South. 268, 270, the rules, by which a statute is to be tested, are stated as follows: "First, that the Constitution is a limitation, not a grant, of power; second, that its mandates are the supreme law of the legislative, executive, and judicial departments of this government; third, that the propriety and wisdom of enactments by the lawmakers are questions peculiarly and exclusively within the decisive right of that department, and, if the act under investigation contravenes no provision of the organic law, the judiciary is without rightful power to review the legislative determination of the wisdom and propriety of the action taken, and, fourth, that every enactment is presumptively constitutional, and therefore valid, and he who assails it assumes the obligation to demonstrate beyond a reasonable doubt its violation of the fundamental law."

Chief Justice ANDERSON declared in *State, ex rel. Collman v. Pitts, Probate Judge*, 160 Ala. 133, 145, 146, 49 South. 441, 445 (135 Am. St. Rep. 79) that:

"It is an established rule of construction, which makes it the imperative duty of the court to uphold a statute, when it is fairly susceptible of two interpretations, one of which will uphold its constittuionality, and the other defeat it. though the adoption of the former be the less natural; ut res magis valeat quam pereat."

This was in accord with the statement of the rule by Chief Justice STONE in *Quartlebaum v. State*, 79 Ala. 1, 3._ So in *State*,

*ex rel. City of Mobile v. Board of R. & R. Com'rs, Mobile County,* 180 Ala. 489, 499, 61 South. 368, 371, it is said: "The question is one of legislative power, and    *    *    *    we have no right to exercise ourselves about the policy or wisdom of the statute, *    *    *    the Legislature has a power which is so transcendent that it cannot be confined within any bounds, either for causes or persons, except such as are written in the organic law,    *    *    * and    *    *    *    he who assails a statute on the ground that it is unconstitutional assumes the burden of vindicating his position beyond a reasonable doubt.—*State, ex rel. Meyer v. Greene,* 154 Ala. 254 [46 South. 268.]."

The rule in this state is now well established (1) that constitutional provisions designed for the "security of the elementary rights of life, liberty, and property should be construed liberally in favor of the citizen" (*Sadler v. Langham,* 34 Ala. 311; *Dorman v. State,* 34 Ala. 216; *State v. B. So. Ry. Co.,* 182 Ala. 492, 62 South. 77, Ann. Cas. 1915D, 436) ; (2) that, where the legislative act in question prescribes a "rule of purely governmental policy, or relates merely to the conduct and administration of public affairs," it will not be declared unconstitutional unless it is repugnant to the organic law "beyond a reasonable doubt."—*State, ex rel. Meyer v. Greene,* 154 Ala. 294, 46 South. 268; *City of Ensley v. Simpson,* 166 Ala. 366, 52 South. 61; *Fairhope Single Tax Corporation v. Melville,* 193 Ala. 289, 69 South. 466; *State v. Birmingham Southern Ry. Co.,* 182 Ala. 492, 62 South. 77, Ann. Cas. 1915D, 436; Cooley on Const. Lim. c. 7, § 6; *State, ex rel. Troy v. Smith,* 187 Ala. 411, 65 South. 942.

The Legislature intended by the provisions of section 14 of the commission government act to secure for municipal government competent and responsive representatives of the people in the conduct of the domestic affairs of the municipality. To that end, the act retained in the duly qualified voters of the municipality the directing and appointing power. This was undoubtedly to stimulate a constant and active interest in, and supervision over, the administrative agents of the municipality, to the ends of fostering the business, rather than the political feature of the city government, and of preventing any incompatability between the form of government, and its actual administration. This has been the ideal of publicists. To lead to such governmental perfection, there have been proposed many administrative features,

one of which is the "recall." It is now no new theory of adminis-
tration, having long been embodied in the political systems of
many American municipalities. This effort to render municipal
administration responsive to the real governing power—the will
of the people as expressed by the qualified electorate of the mu-
nicipality—is not opposed to public policy. The wisdom of
such a legislative expedient is a question with which we have no
concern. It is responsibility exercised by the legislative branch
of our government.—Cooley, Const. Lim. (7th Ed.) 126; *State v.
Bergoff*, 158 Ind. 349, 63 N. E. 717. Legislative jurisdiction was
long ago declared by Sir Edward Coke to be "so transcendent that
it cannot be confined either for cause or person within any
bounds."—2 Coke, Inst. 36. This constitutional axiom, with us,
of necessity implies that the act is legislative, and is not in
nature judicial or executive, is not contrary to the express terms
of the Constitution.—*Davis v. State*, 68 Ala. 58, 44 Am. Rep. 128.

In the ascertainment of the legislative will, we must look to
the whole act, and not alone to separate sections, sentences, or
expressions therein. Mechanical arrangement, for convenience,
such as the numbering of the sections, will not be permitted to
give a strained or unnatural construction, or to defeat the legis-
lative intent as declared in the four corners of the act. Related
subjects found in separate sections and sentences will be trans-
posed and read together, if necessary, to find or give the true
legislative construction.—*Bull's Estate*, 153 Cal. 715, 96 Pac. 366;
*Gherna v. State*, 16 Ariz. 344, 146 Pac. 494. This is but the ap-
plication of a general rule of construction that: "Effect is to be
given, if possible, to the whole instrument, and to every section
and clause. If different portions seem to conflict, the court must
harmonize them, if practicable, and must lean in favor of a con-
struction which will render every word operative, rather than one
which may make some words idle and nugatory."—Cooley, Const.
Lim. (7th Ed.) p. 91; 2 Lewis' Sutherland, Stat. Con. par. 380;
*State, ex rel. Wilkinson, et al. v. Lane*, 181 Ala. 646, 655, 62 South.
31 (2) ; *State v. McLain*, 58 Ohio St. 313, 50 N. E. 907.

If, then, we are not hindered by the arrangement of the sev-
eral provisions made in the act, set forth in sections 4, 10, 14, 15,
and 27 thereof, for the selection and election of a representative
commission, there is little difficulty in finding the legislative will
be as to the method of selection and election by the qualified
voters of the municipality, and as to the limitations upon the

incumbency of each of the commissioners so designated. If sec-tions 4, 10 and 14 be read together, and the provisions of section 14 be considered with and immediately after the words, "shall hold office for three years and until his successor is elected and qualified," it is plain that the Legislature intended to fix an indeterminate incumbency in office within the three-year period. If such was the case, the commissioners so elected took a limited incumbency in office subject to termination at the will of the electorate of the municipality, expressed at any time within three years, and at all events at the end of three-year period.

Is the fixing of such limited incumbency in office, in the act creating the office, opposed to organic law? It is not denied that the Legislature was supreme in declaring the terms of incum-bency in office. It might have denied the right to a commissioner to succeed himself, or have declared that the term of incumbency in office should be any certain named period, or should be inde-terminate, or should terminate on the happening of the contin-genies provided for in sections 15 and 27, or that the commis-sioners should hold office subject to the will of the qualified voters of the municipality, to be expressed as provided for in the act. Pertinent observations, on the right of the Legislature to exercise an unrestricted discretion as to what shall be a qualifica-tion for holding office, were made in *State, ex rel. Brassell v. Teasley, Probate Judge,* 194 Ala. 574, 69 South. 723, 725, 728. It has the same power as to fixing a term of office or defining the right of official incumbency therein.

The lack of a vested right to office, in a commissioner, is not left to implication; the positive legislative declaration conferred only an indeterminate term of office. The Legislature not being restrained by constitutional inhibition in fixing the term of in-cumbency in office of a municipal commissioner, such term of incumbency might have been declared for the definite period of three years, instead of an indeterminate period within a fixed number of years, or vice versa. The fact that the electorate must be appealed to every three years did not create a vested right in a three-year term of office, but only such right of incumbency could be acquired by election as was expressly declared by the terms of the whole act. The concluding words of section 4—that each commissioner elected after the first election thereinbefore provided for "shall hold office for three years and until his suc-cessor is elected and qualified. The election in this paragraph

authorized, * * * shall conform in all respects to the provisions and regulations hereinafter contained with respect to elections of commissioners"—placed it beyond question that the Legislature was not thus fixing a three-year vested right in the officials to office, in either section 4 or section 10. Nor was the act a legislative effort, through section 14, to evade the provisions for impeachment for causes declared in section 173 of the Constitution. No question of impeachment was being dealt with. This representative office was conferred on a commissioner, to carry out the will of the electorate, and when administration through that commissioner failed in this respect, the commissioner could be recalled by the electorate, according to the express terms of the act creating the office.

This was the rule declared in *Touart v. State, ex rel. Callaghan, supra,* where it was stated, Mr. Justice MAYFIELD writing:

"If the appointing power is given the right to fix the term during which the appointee is to hold office, then, of course, the right of the appointee terminates at the end of the will of the appointing power; that is, the appointing power can remove him at pleasure, unless the act or statute authorizing his appointment provides otherwise. * * *

"When a person is appointed to an office, the term of which is not fixed by law, he is then and ever after regarded as holding subject to the will of the appointing power; and this, upon the theory that the power of removal is incident to the power of appointment; and, when he is removed, he is not thereby deprived of any vested right or function, because the very condition of his appointment was that he could be removed at the pleasure of his appointing power."

The *Touart Case* is rested on the proposition that, since the term of office is for no fixed period, the right of removal is implied as an incident to the right of appointment, and that the incumbent, acquiring no vested right to the office for any fixed period, is not within the protection of section 175 of the Constitution. That is to say, the principle of this case is that a vested right to office may be withheld by the creator of the office, in which case an incumbency thereof would not involve a right of tenure for any fixed period.

In the case at bar no vested right to the office for any fixed period accrues to an incumbent in such office, for the act by express and unmistakable declaration denied to every such incum-

bent a vested right to the office for a fixed period, and merely gave him an indeterminate tenure for a period not to exceed three years.    Herein the principle of the *Touart Case* finds applicability to the instant case.    In *Nolen v. State, ex rel. Moore*, *supra*, the facts were that in August, 1896, Moore was elected tax assessor of Coosa county for a term of four years.    At that time there was in force a statute (Acts 1886-87, p. 1), purporting to authoribe the Governor to suspend tax assessors and appoint a commissioner to perform the duties of the assessor.    Acting under this statute, the Governor suspended Moore from office and appointed Nolen commissioner.    Nolen took charge of the tax assessor's office, and by quo warranto Moore ousted him.    In the opinion in that case it was said: "A tax assessor can be removed from office only in the mode prescribed by the organic law, that is, by impeachment under section 3, article 7, of the Constitution. * * * The 'suspension' provided for is in legal contemplation essentially a removal from office, accomplished, if held to be effective, without impeahment and without the semblance of a trial by jury or otherwise."

The *Nolen Case* differs from the case at bar.    After the creation of the office of tax assessor, with a vested right to a fixed and definite tenure for a definite term of incumbency therein, the effort to remove the incumbent otherwise than by impeachment was held to offend the Constitution.    Such is not the fact in the instant case, for the act creating the office of commissioner denied to the incumbent therein a fixed and definite tenure for a definite term, and provided for such incumbent only an indeterminate tenure in office, subject to be terminated by the electing power which placed him in office.    It is a further pertinent observation of the *Nolen Case* that no reference was made to the fact that the incumbent of the office was elected subsequent to the act providing for suspension or removal from office.    Such fact was held to be important by two recent recisions of this court, *Clark v. State, ex rel. Graves*, 177 Ala. 188, 59 South. 259, and *State, ex rel. Thomas v. Gunter*, 170 Ala. 165, 54 South. 283.    In *Clark's Case* the court discusses *Gunter's Case* as follows:  "In that case, however, the Constitution did not create the office of judge of the city court of Montgomery, nor impose any restraints whatever upon the Legislature with respect thereto; and it was within the legislative power to either abolish the office, or to change, abridge, or extend the term, subject only to those constitutional restraints

which are designed for the protection of incumbents against any diminution of asalary during the term for which they have been elected or appointed, and from removal from office other than by impeachment.—Sections 68, 150, 174, Constitution 1901. The ruling was that these provisions did not affect Judge Thomas, because he was not an incumbent of the office at the time of the passage of the legislative act which he was attacking, and as to subsequent incumbents the act could not be obnoxious to the restraints referred to, and was valid and operative. This ruling was not, therefore, based on any theory of estoppel, but on the principle that a statute valid as to some and invalid as to others can be attacked only by one who is injured by its unconstitutional operation."

In the *Gunter Case,* speaking through the present Chief Justice, it is said: "The city court of Montgomery is of constitutional authorization, but not of constitutional creation, and can be established or abolished at the will of the Legislature. Whether or not, however, the Legislature could maintain the court, and at the same time change or curtail an existing tenure of office, without violating one or more of the above-mentioned sections of the Constitution, we do not decide, for if there was no authority to do so, said provisions cannot apply to the relator Thomas. These provisions are intended as a protection to incumbents, at the time of the legislative enactment, and do not apply to officials accepting office subsequent to said legislation."—*State, ex rel. v. Gunter, supra.*

Since the Constitution does not inhibit the creation of the office of commissioner in this case, such office, though not of constitutional creation, is permitted by the Constitution. What was said in the *Gunter Case* touching the judgeship of the city court, in reference to section 174 of the Constittuion, is equally true of the office of city commissioner, with reference to section 175 of the Constitution. Relator Schwarz, as a qualified voter, sought and was elected to the office of commissioner under the provisions of an act which prescribed, as an express condition of the right to hold the office, that it should be held subject to, and limited by, the will of the qualified voters under section 14 of the act. He acquired by his election no right of office or of tenure thereof superior to the right and tenure conferred by the express terms of the act; and was subject to all the limitations by the act imposed on incumbents in the office of commissioner of the city of

Mobile. And no provisions of the act was an obnoxious restraint on the right to an undiminished salary during a definite term of office or vested right of incumbency therein. A recall, under the express provisions of the act, was not a removal from office otherwise than as prescribed by the Constitution. Relator can claim no protection under sections 173 and 175 of the Constitution, in his effort to hold the office freed from the imperative limitations and conditions assented to when he sought, and was elected to, the office. To hold otherwise would be to lay an inhibition on the legislative jurisdiction to fix the term of office and incumbency therein, not found in the Constitution.

The indefinite and indeterminate nature of the tenure of office of a municipal commissioner is further emphasized by the provisions of section 16 of the act, for his compensation. The use in that section, of the expression to the effect that each commissioner shall receive "a salary payable by the city in equal monthly installments for whatever time the commissioner serves; * * * at the rate of $1,500 per year" (in cities of a designated class), or that the salary of the commissioner "shall be at the rate per annum of $1,000" (in cities of another class), is in accord with the indefinite or indeterminate incumbency in office of a commissioner under the provisions of the commission government act.

The expression in sections 4 and 10 as to the term of office cannot be considered alone and taken as the full and sole legislative declaration of a definite and fixed term of office, to the exclusion of the limitations thereon (which we have pointed out) found in other sections of the act. When the whole act is considered, as it must be (*City of Birmingham v. Southern Express Company*, 164 Ala. 529, 538, 51 South. 159), no violation or evasion of the Constitution is found to have intervened.

Testing the act by the several fundamental rules of statutory construction, we have shown (1) that the legislative intent, as certained from the whole act, was not to fix a definite term, but an indeterminate tenure of office of commissioners; (2) that in an act of this class its unconstitutionality must appear beyond a reasonable doubt. It remains to be shown that, by long prevailing rules of statutory construction, in this and many other states, section 14 must be given a limiting and controlling effect over the general expressions in section 4 and 10, as to the incumbency in office of commissioners. (3) When the entire act is considered, with the view to give effect, if possible, to each separate section

or provision thereof, and there is found to be a conflict between certain sections or provisions, then the last section or provision, added by way of amendment, or the last in point of arrangement of the act, must control. This is the rule declared in Alabama, *Hand v. Stapleton,* 135 Ala. 162, 33 South. 689; *Ex parte Thomas,* 113 Ala. 1, 21 South. 369; by the federal court, *Buttfield v. Stranahan,* 192 U. S. 470, 495, 24 Sup. Ct. 349, 48 L. Ed. 525; *In re. Richards,* 96 Fed. 939, 37 C. C. A. 634; by the following American state courts, viz.: California—*Yick Wo.,* 68 Cal. 304, 9 Pac. 139, 58 Am. Rep. 12; *People v. Dobbins,* 73 Cal. 259, 14 Pac. 860; Colorado—*Branagan v. Dulaney,* 8 Colo. 408, 412, 8 Pac. 669; *Calhoud Gold Mine Co. v. Ajax Gold Mine,* 27 Colo. 14, 59 Pac. 607, 50 L. R. A. 209, 83 Am. St. Rep. 17; Florida—*Sams v. King,* 18 Fla. 557; Indiana—*Quick v. White Water Tp.,* 7 Ind. 570; Illinois—*Peterson v. People,* 129 Ill. App. 55, 57; Kansas—*K. P. R. Co. v. Wyandotte Co.,* 16 Kan. 594; Mississippi—*Gibbons v. Brittenum,* 56 Miss. 232; Missouri—*Westpoint v. Jackson,* 69 Mo. App. 148; Montana—*State v. Courtney,* 27 Mont. 378, 71 Pac. 308; North Dakota—*State v. Burr,* 16 N. D. 581, 113 N. W. 705; Nebraska—*Omaha R. E. Co. v. Reiter,* 47 Neb. 592, 66 N. W. 658; *Ryan v. State,* 5 Neb. 282; *Albertson v. State,* 9 Neb. 429, 2 N. W. 742, 892; Nevada—*Ex parte Hewlett,* 22 Nev. 333, 40 Pac. 96; Maine—*Howard v. Bangor R. Co.,* 86 Me. 387, 29 Atl. 1101; New York—*Harrington v. Rochester,* 10 Wend. (N. Y.) 553; Ohio—*State v. Shelby Co.,* 36 Ohio St. 326; Pennsylvania—*Packer v. Sunbury R. Co.,* 19 Pa. 211; *Brown v. Phil. Co.,* 21 Pa. 42; and by the Dominion of Canada, *Regina v. Rose,* 27 Ont. R. 195; *Potts v. Potts,* 31 Ont. R. 452.

The text-books are agreed as to this rule. In Maxwell on Statutes (3d Ed.) pp. 214, 216, the writer says: "The latter of two passages in a statute, being the expression of a later intention, should prevail over the earlier, as it unquestionably would if it were embodied in a separate act."

To the like effect is the rule as stated in 36 Cyc. 1130: "In accordance with the well-settled principle that the last expression of the legislative will is the law, in cases of conflicting provisions in the same statute, or in different statutes, the last enacted in point of time prevails, and, on the same principle, if both were enacted at the same time, the last in order of arrangement controls."

The statement in 26 Am. & Eng. Ency. Law (2d Ed.) p. 619, is: "Where there is an irreconcilable conflict between different

parts of the same section, the last in order of position must con-- trol, or the clause which is directed specifically to the matter in preference to others mentioning it incidentally only."

In section 183, Endlich on Interp. Stat. (1888), the author says: "Where, in a statute, there are several clauses which pres-- ent, as compared with each other, an irreconcilable conflict, the one last in order of date or local position must, in accordance with this rule, prevail, and the others be deemed abrogated to the ex-- tent of such repugnancy; whether the conflicting clauses be sec-- tions of the same act, or merely portions of the same section. But this rule is subject to some modification.  *  *  *  As to re-- pugnant portions of a code, it has been held that the sections last adopted, or portions transcribed from later statutes, must be deemed to repeal sections adopted earlier or transcribed from earlier statutes, or so to modify them as to produce an agreement between them."

Black (Interpretation of Laws, p. 168) declares that: "In construing a. statute containing a general enactment and also a particular enactment, the effort must be, in the first instance, to harmonize all the provisions of the statute, by construing all the parts together, and it is only when, on such a construction, the repugnancy of specific provisions to the general language is plain-- ly manifested, that the intent of the Legislature as declared in the general enacting part is made to give way. But, it is a general rule that where there is an irreconcilable conflict between dif-- ferent sections or parts of the same statute, the last words stand, and those in conflict with them are repealed.—*Albertson v. State,* 9 Neb. 429, 2 N. W. 742, 892; *Ryan v. State,* 5 Neb. 276; *Quick v. White Water Tp.,* 7 Ind. 570."

In Lewis' Sutherland, Statutory Construction (2d Ed.) vol. 2, § 349, it is said: "Where one part of an act is in conflict with another, and they cannot be brought into harmony by any rule of construction; where they are of equal scope, and there is a point blank repugnancy, so that if one operates at all it will necessarily antagonize any effect of the other, what is the consequence? The decisions are to the effect that the provision which is latest in position repeals the other. Being later in position, the prevailing provision is deemed a later expression of the legislative will. This rule and the reason for it have been criticised, because, all the provisions of an act being adopted at the same time there is no priority in point of time on account of their relative positions

in the statute. This is strictly true; but, in the reading of a bill, matter near the close may be presumed to receive the last consideration, and, if assented to, is a later conclusion. Slight circumstances preponderate when a question is at equipoise."

Of the many authorities cited in support of this text, are *Ex parte Thomas,* 113 Ala. 1, 21 South. 369; and *Hand v. Stapleton,* 135 Ala. 156, 33 South. 689.

The above rule of construction·was applied by Chief Justice BRICKELL in *Ex parte Thomas, supra,* where a succeeding section of the Code of 1886 was made to "preponderate" over a preceding section in the same Code. So in *Hand v. Stapleton, supra,* the rule was applied by Chief Justice TYSON, in the construction of the Baldwin county courthouse removal act. That act, by its first section provided for the unconditional removal of the county seat, and by its tenth section made the removal condition; and it was held that the latter section controlled. The court said: "We think it is entirely clear, when we view the whole act, that it was the intention·of the Legislature that the courthouse and jail were only to be removed in the event they could be built at Bay Minette upon a lot to be donated, out of the subscription, proceeds arising from the sale of the property owned by the county at Daphne, and such sum of money as the county could appropriate during the year 1901 without increasing the tax rate for that year. While it is true, as we have said, the first section of the act provides for the unconditional removal of the county seat, the tenth makes the removal conditional and must control. The rule is, as between conflicting sections of the same act, the last in order of arrangement will control."—*State Tax Com. v. Smith,* 188 Ala. 432, 66 South. 61.

We have referred to original Senate Bill No. 341, introduced on the thirty-first day of the session (Senate Journal, p. 888), which, with amendments, became the statute in question. This bill in its original form contained sections 4, 10, 14, and 16, and in the form and arrangement in which they now appear in said act.—Gen. Acts 1911, pp. 330, 332. 340, 345, 347. It follows, therefore, that sections 14 and 16, in declaring and fixing the in-·cumbency of the commissioners, were of controlling effect over the general expressions found in other sections of the act; and these two sections provided that the time of incumbency in office of a commissioner should be indeterminate, within a three-year period, and that his compensation should be "for whatever time

the commissioner serves." By a further rule of construction, section 14 must take precedence over the two former sections, 4 and 10. It is (4) that where one section of an act or statute treated a question specifically, it must prevail, in reference to such matter, over other sections in which the reference is incidental, or wherein general provision is made.

In this case the limited incumbency in the office, within the three-year period, as provided for in sections 14 and 16, was the legislative objective, rather than the idea to be drawn from the general expression in the former sections. Section 4 had provided for the initial organization of this form of municipal government, of which the distinctive and controlling feature is the recall, provided for in section 14. That the general expression in section 4—"shall hold office for three years and until his successor is elected and qualified"—was not intended to be the sole statement in the act, as to the time or term of commissioners, is further fortified in the same section by the subordinating clause specifically providing that: "The elections in this paragraph authorized, including the naming of candidates, shall conform in all respects to the provisions and regulations hereinafter contained with respect to election of commissioners."—36 Cyc. 1130; 26 Am. & Eng. Ency. Law, 618, 619.

The opinion appears to take it for granted, in face of these well-known rules of statutory construction, that the statute fixes the term of office at three years, and to reject section 14 with the statement that "the evident effect of this provision is to afford the opportunity and means of removing an incumbent during the term." Does not this assumption unduly withdraw sections 4 and 10 from the context of the act, by giving them a conclusive or binding effect not given to other sections, and not intended to be conferred by the Legislature? Sections 4 and 10 could have no controlling effect until their adoption; before their adoption, and after their consideration, these sections were materially limited or modified by the specific expressions of sections 14 and 16.

In the *Touart Case,* this court is committed to the holding that the Legislature has the power to create an office within the liberal scope of section 175 of the Constitution; and that, to withdraw or except an office from the application of section 175, the act of its creation must withhold from the incumbent, at the inception of the office, any vested right thereto for a fixed term. This was done in the instant case, if section 14 is entitled to controlling effect over the former sections of the act.

[Williams, Probate Judge, v. State, ex rel. Schwarz.]

We close the question with the observation that no clearer expression can be made of the law as to the dominating influence of the intention of a statute in the construction of all its parts, than that which is found in Kent's Commentaries (vol. 1, 461) : "In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter. When the words are not explicit the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion."

Mr. Sutherland condensed this rule into his statement that: "The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legislature apparent by the statute; and, if the words are sufficiently flexible to admit of some other construction, it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act; * * * the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words."—Lewis' Sutherland Stat. Constr. 376.

And our own court has given cogent expression to the same principle, to the effect, that, of two interpretations of which a statute is susceptible, the "less natural" should be adopted if this is necessary to uphold the constitutionality of the act.—*State, ex rel. Collman v. Pitts, as Judge, etc., supra.* All such statements of the rule are grounded on the wise declaration of Chief Justice MARSHALL, that in "doubtful cases," and on "slight implication and vague conjecture," no act or statute should be declared unconstitutional.—*Fletcher v. Peck, supra.* If the words, "shall hold office for three years and until his successor is elected and qualified," are literally construed, in an act that has as its central and dominating idea an indeterminate term within a three-year period, then the letter is made to crush and destroy the spirit of this new idea of municipal government. It is patent that such words were used in the act in the sense of time, and not of term of office, and that the words are "sufficiently flexible" to afford, if they are not clearly susceptible of affording, an interpretation that is not only not the "less natural" of two interpretations but is the one more nearly in obvious accord with

the legislative will as expressed in the whole act, and with the spirit of democracy that gave it birth.

It is clear to us, by the rule of statutory construction—such as, that effect will be given to the legislative will as expressed in the whole act—that constitutionality will be presumed unless the contrary is shown beyond a reasonable doubt; that the subsequent in position, of conflicting provisions, must control; that, of conflicting expressions, the general must give way to the specific —that section 14, which specifically provided an indeterminate tenure of office of commissioners, was a limitation and modification of the general expression as to term embraced in the former sections of the act.

Justices SAYRE and GARDNER concur in the views of the writer.

### ON REHEARING.

ANDERSON, C. J.—The court, that is, the majority, are in no wise at issue with the contention of counsel for the appellant, or the minority views as expressed in the opinion of Justice THOMAS, as to the rule and method of statutory construction, but the chief point of difference is, not as to the rule to be followed in construing the statute in question, but the construction to be given same under the rule as set forth in said minority opinion. The minority seem to proceed upon the theory that the recall feature of Acts 1911, p. 345, § 14, operates upon the term and cuts down a fixed term of three years, as fixed by sections 4 and 10, to an indefinite or unfixed term, but not to exceed three years. If this construction could be given the act, we are willing to concede the soundness of the conclusion of the minority. The majority, however, think that the recall, as provided by section 14 of the act, relates only to the incumbent and not the term, and that the statute is so plain in this respect that there is nothing to interpret, and, this being so, the case of *Nolen v. Moore,* 118 Ala. 154, 24 South. 251, is in point and we are unable to distinguish in principle that case from the one at bar and must confess an inability to appreciate the attempted distinction in the minority opinion. Sections 4 and 10 of the Act of 1911 expressly fixed the term of commissioner at three years. Section 14 provides for a recall and the election of a successor and if it stopped at this, and provided for a new term for the successor or an indefinite term, or terminated in any way the term previously fixed upon the

[Jolley v. Southern Railway Co.]

recall of the incumbent, then it might be possible to construe the act as is done by the minority; but section 14 goes further and expressly preserves the term of three years as fixed by the previous sections, by providing that the successor, to the incumbent, who may be recalled, shall hold for the unexpired term unless sooner recalled. In other words, the act plainly, clearly, and without ambiguity (there being nothing for interpretation), provides for a fixed term of three years, regardless of the number of recalls, and, this being the case, the recall provided operates only upon the individual and not the term; and, as long as the term is preserved as it existed when the incumbent took the office, he cannot be removed therefrom except in the manner prscribed by section 175 of the Constitution, and as was so held in the *Nolen Case, supra.*

The act in question was a plain and palpable legislative invasion of our organic law, in so far as it provides for the removal of the incumbent by a recall, which was the will of the people as solemnly expressed in their Constitution of 1901, and it is the imperative duty of the court to guard and protect these Constitutional rights from the legislative invasion and to condemn the same whenever plainly and palpably repugnant to our organic law.

The application for rehearing must be overruled.

McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur.