MAIN, Justice.
Alabama Psychiatric Services, P.C. (“APS”), and Managed Health Care Administration, Inc. (“MHCA”), the defendants in this action, appeal from the trial court’s order denying their motions for a judgment as a matter of law (“JML”) made at the close of all the evidence. Although the jury entered a verdict for APS and MHCA, they nonetheless argue that the two claims that were ultimately tried should not have been submitted to a jury. APS and MHCA also appeal from the order entered by the trial court granting a motion for a new trial filed by A Center for Eating Disorders, L.L.C. (“ACED”), the plaintiff in this action. The trial court’s order overturned the judgment entered on a jury verdict for APS and MHCA. We reverse and remand.
I. Factual Background and Procedural History
In its order granting in part the motions for a summary judgment filed by APS and MHCA, the trial court stated the facts as follows:
“Plaintiff A Center for Eating Disorders, L.L.C. (‘ACED’), opened on February 23, 2009, providing partial hospitalization treatment (‘PHP’) for individuals suffering from eating disorders. In a PHP program, patients come to the facility for various treatment sessions for five or six hours per day for five or six days per week. ACED is fully accredited by the Joint Commission.[1]
“Blue Cross Blue Shield of Alabama (‘BCBS’) is in the health insurance business. BCBS does not have a preferred provider network for individual mental health providers. BCBS utilizes Managed Health [Care Administration], Inc. (‘MHCA’) to manage behavioral health networks for their members. MHCA is owned mainly by physicians who work for [Alabama] Psychiatric Services, P.C. (‘APS’). Additionally, MHCA is managed by two non-physicians who are also employed by APS. Rusty Adams has been the Chief Operating Officer of APS for 20 years and the Chief Operating Officer of MHCA for 15 years. Similarly, Doyle Stewart has been the Chief Financial Officer of both APS and MHCA for the past 10 years. BCBS has testified that it was not aware of the overlapping ownership between MHCA and APS.
*711 “APS entered into a contract with BCBS in 1986 to manage what is known as Expanded Psychiatric Services (‘EPS’). In 1991, that contract was transferred from APS to MHCA. MHCA now manages a number of behavioral health networks for BCBS. BCBS contracts with members for health insurance and out of the premiums it receives, BCBS pays MHCA $3.10/month per member. MHCA is expected to arrange mental health services for these members for that monthly payment, and any leftover amount is profit to MHCA. Many BCBS group health insurance plans and self-funded group plans administered by MHCA provide mental health benefits for their members through three benefit designs that access certain preferred provider networks: (1) Expanded Psychiatric Services benefits; (2) Expanded Psychiatric Services Exclusive (‘EPX’) benefits; and (3) Blue Choice Behavioral benefits (‘Blue Choice’).
“The services of mental health professionals covered under BCBS are accessed through EPS and administered by MHCA. APS operates the [Eating Disorders Center of Alabama (‘the EDCA’) ], which provides treatment for patients through a partial hospitalization program. In a prior trademark suit filed by APS against ACED, APS alleged that the services provided by ACED were essentially identical to the services provided by the EDCA. BCBS members with EPS benefits in their health plan may obtain PHP services for eating disorders by accessing their EPS benefits.
“BCBS has stated that ACED is not an MHCA provider and that any claims submitted by ACED are paid as Out of Network benefits, regardless of whether or not the plan provides access to EPS benefits. As a result, BCBS members seeking behavioral health treatment receive no benefit whatsoever if they choose treatment at ACED. This places ACED at a clear competitive disadvantage, as BCBS members with EPS plans constitute 90-95% of the market. If members wanted any EPS benefits at all for behavioral health treatment, they were required to choose treatment at the EDCA, which is operated by APS and managed by the same individuals who manage MHCA.
“Before ACED opened, it contacted BCBS about seeking Individual Case Management (TCM’) agreements. Under an Individual Case Management agreement, BCBS and the provider work together to design an individual contract for services that are otherwise not covered under the member’s health plan. Individual Case Management Agreements are discretionary and subject to the voluntary participation of BCBS, the member and the provider. On most occasions, BCBS declined to agree to an Individual Case Management Agreement with ACED.
“The contract between Blue Cross and MHCA requires that if MHCA subcontracts or otherwise delegates any of its health network functions it must be done by another contract authorized by BCBS. The contract also requires that MHCA must have contractual agreements with any providers it deems to be ‘in-network,’ and thus able to receive benefits from BCBS under the EPS network. APS is the only provider deemed by MHCA to be ‘in-network.’ ”
ACED opened its doors under the name Alabama Center for Eating Disorders and using the acronym ACED. Shortly thereafter, as the trial court noted, APS filed a trademark-infringement lawsuit against ACED, arguing that ACED’s name infringed on the name of APS’s eating-disor *712 der center. ACED voluntarily changed its name to A Center for Eating Disorders so that it could continue to use the acronym ACED, and the trademark-infringement lawsuit was dismissed. After MHCA refused to allow ACED to apply as a services provider for the network of mental-health professionals treating patients insured by Blue Cross Blue Shield of Alabama (“Blue Cross”) with EPS benefits, ACED filed its own seven-count lawsuit against APS, MHCA, and Blue Cross. ACED alleged intentional interference with contractual or business relations (count I); defamation (count II); fraud, misrepresentation, and deceit (count III); breach of contract (count IV); interference with the healthcare-provider/patient relationship (count V); civil conspiracy (count VI); and a count seeking declaratory relief (count VII), in which ACED sought to have the trial court “enjoin [APS and MHCA], separately and severally, from employing artificial and improper restrictions on [ACED’s] business and patients seeking pre-certification or coverage/benefits; from engaging in conduct that disparages [ACED] and/or its staff; [and] from engaging in conduct that interferes with [ACED’s] Health Care Provider/Patient relationship.”
APS, MHCA, and Blue Cross initially filed motions to dismiss ACED’s complaint. The trial court denied those motions as to all counts except count III, which alleged fraud, misrepresentation, and deceit. As to count III, the trial court ordered ACED to file a more definite statement. When ACED filed nothing further, the trial court entered an order on January 6, 2010, dismissing count III as to all defendants with prejudice.
APS, MHCA, and Blue Cross then filed motions for a summary judgment; ACED opposed those motions. All parties filed evidence supporting their respective positions. The trial court heard what it described as “extensive oral arguments” on the summary-judgment motions on April 13, 2011. On April 19, 2011, the trial court entered a summary judgment for APS and MHCA as to count II (defamation). On June 29, 2011, the trial court entered detailed orders on the summary-judgment motions. As to Blue Cross, the trial court entered a summary judgment in its favor on all counts except count VII (seeking declaratory relief). As to APS and MHCA, the trial court entered a summary judgment in their favor as to counts IV (breach of contract) and V (interference with the health-care-provider/patient relationship). The trial court denied the summary-judgment motions as to count I (intentional interference with contractual/business relations) and count VI (conspiracy). The trial court made no ruling on count VII, the count seeking declaratory relief, in its June 29 order.
On October 13, 2011, the trial court entered an order finding that the evidence before it indicated that there was no justi-ciable controversy requiring declaratory relief in this case because, the court said, “a judgment of this Court would not affect [ACED’s] legal position and would not provide [ACED] with any relief. Additionally, [ACED] lacks standing to obtain the requested relief.” The trial court then entered a summary judgment in favor of APS and MHCA as to count VII. It also entered a summary judgment in favor of Blue Cross as to count VII and, because no other claims remained pending against Blue Cross, dismissed Blue Cross as a defendant with prejudice.
The case then proceeded to trial against APS and MHCA on counts I and VI of ACED’s complaint. Before trial, APS and MHCA filed an extensive motion in limine as to numerous items; ACED also filed a motion in limine. On November 9, 2011, the trial court entered an order responding *713 to the items that were the subject of the motions in limine. The trial began on November 14 and concluded with a verdict in favor of APS and MHCA on November 18. The trial court had denied APS’s and MHCA’s motions for a JML made at the close of all the evidence. The trial court entered a judgment on the jury verdict on November 18.
ACED then filed a motion for a new trial. ACED argued that the trial court erred in excluding certain evidence pursuant to its pretrial order on the parties’ motions in limine. ACED concluded by arguing that the trial court’s exclusion of the evidence discussed in its motion prevented ACED “from showing the true manipulation of this sham network by no written agreement and the actual false statements made in later contracts.” After APS and MHCA responded to the motion for a new trial, the trial court heard argument on the motion. On January 26, 2012, the trial court entered an order granting ACED’s motion for a new trial and reinstating count IV (breach of contract) as to which the court had entered a summary judgment in favor of APS and MHCA. APS and MHCA appealed.
II. Standards of Review
A. Motion for a JML
“When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).”
Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala.2003).
B. Motion for a New Trial
‘When the court grants a motion for a new trial on grounds other than a finding that the verdict is against the great weight or preponderance of the evidence, this Court’s review is limited.
“ ‘ “It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.” ’
“Curtis v. Faulkner Univ., 575 So.2d 1064, 1065-66 (Ala.1991) (quoting Kane v. Edward J. Woerner & Sons, Inc., 543 So.2d 693, 694 (Ala.1989), quoting in turn Hill v. Sherwood, 488 So.2d 1357, 1359 (1986)).”
*714 Baptist Med. Ctr. Montclair v. Whitfield, 950 So.2d 1121, 1125-26 (Ala.2006).
III. Analysis
The elements of a claim of intentional interference with business relations are (1) the existence of a protectable business relationship; (2) of which APS and MHCA were aware; (8) to which APS and MHCA were strangers; and (4) with which APS and MHCA intentionally interfered; and (5) damage to ACED. White Sands Grp., LLC v. PRS II, LLC, 32 So.3d 5, 14 (Ala.2009). APS and MHCA first argue that the trial court erred when it denied their motions for a JML at the close of all the evidence. Because ACED failed to support each of the elements of intentional interference with a business relationship with substantial evidence, they argue, they were entitled to a JML as to that claim. They further argue that because they are entitled to a JML as to ACED’s claim of intentional interference with a business relationship, ACED’s conspiracy claim also fails.
The dispositive question presented by this appeal is whether ACED presented substantial evidence at trial of any act of intentional interference by APS or MHCA with ACED’s business relationships. APS and MHCA argue that they did not attempt to manipulate the market so that APS is MHCA’s only in-network provider for eating-disorder partial-hospitalization (“PHP”) services or to ensure that APS “gets all the business.” APS and MHCA’s brief, at 27. Instead, they say, “MHCA has simply made the business decision that, in order to provide the appropriate and required treatment to Blue Cross insureds with [expanded psychiatric services] benefits, it only needs one eating disorder PHP facility in its network of providers.” APS and MHCA’s brief, at 27-28.
APS and MHCA correctly state that this Court has consistently held that a mere refusal to deal is not an intentional interference with a business relationship, citing Axelroth v. Health Partners of Alabama, Inc., 720 So.2d 880, 886 (Ala.1998). APS and MHCA also rely on Denton v. Alabama Cotton Coop. Ass’n, 30 Ala.App. 429, 432-33, 7 So.2d 504, 507 (1942), in which the Court of Appeals held that “[e]very person has the right to deal or refuse to deal with whom he chooses.” Moreover, they say, Aabama courts cannot force a company to do business with another company because, they argue, Aabama law recognizes that a citizen of this state “is free to contract in any way he sees fit,” citing Kinmon v. J.P. King Auction Co., 290 Ala. 323, 325, 276 So.2d 569, 570 (1973). Because the business arrangement between APS and MHCA is within their rights, they argue, ACED’s claims fail as a matter of law. We agree.
APS and MHCA maintain that ACED failed to offer any evidence indicating that MHCA was obligated to include ACED in its approved-provider network for expanded-psychiatric-services policy coverage. They argue that ACED’s claim amounts to an argument that it is “not fair” that MHCA did not approve ACED as an in-network provider, and such a claim, they argue, does not create a valid cause of action. APS and MHCA contend that Renee Miller, ACED’s clinical director and one of the two members of the limited liability corporation, admitted that MHCA had no obligation to do business with ACED and that she knew what ACED’s status with Blue Cross would be before she formed ACED. Furthermore, they argue, Aabama is not an “any willing provider” state in which health insurers are obligated to include all providers in their networks, but, instead, Aabama law permits health insurers to maintain exclusive- *715 provider networks, citing Blue Cross & Blue Shield of Alabama v. Nielsen, 917 F.Supp. 1532 (N.D.Ala.1996). Moreover, APS and MHCA say, there is no evidence indicating that APS or MHCA directed patients away from ACED. They contend that Miller testified only that she thought Blue Cross, APS, and MHCA were acting in collusion and that ACED failed to present any evidence from patients that could establish that APS or MHCA had interfered with their access to ACED.
After reviewing the record in this case, we are unable to find any evidence to suggest that APS or MHCA intentionally interfered with ACED’s business relationships. During Miller’s cross-examination by one of the attorneys for APS and MHCA, she testified that she had no evidence to confirm that APS and MHCA had interfered with ACED’s business and had instructed patients to leave ACED’s program and to attend APS’s program. Miller further testified that MHCA had no obligation to do business with ACED.[2] Based on the record before us, we conclude that ACED simply argues that it is unfair that APS and MHCA have chosen not to contract with ACED for preferred in-network provider services. This does not constitute evidence of intentional interference with an existing business relationship. Furthermore, APS and MHCA have no legal obligation to do business with ACED. Axelroth, 720 So.2d at 886. Consequently, we conclude that, as a matter of law, ACED’s intentional-interference-with-business-relations claim should not have been submitted to the jury. APS and MHCA were entitled to a JML as to that claim.
Likewise, because APS and MHCA were entitled to a JML as to ACED’s intentional-interference-with-business-relations claim, ACED’s conspiracy claim should not have been submitted to the jury. Alabama law is clear that a conspiracy “is not an independent cause of action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action.” Drill Parts & Serv. Co. v. Joy Mfg. Co., 619 So.2d 1280, 1290 (Ala.1993) (citing Allied Supply Co. v. Brown, 585 So.2d 33, 36 (Ala.1991)). Because ACED did not prove its underlying cause of action (intentional interference with business relations), APS and MHCA also were entitled to a JML as to ACED’s conspiracy claim.
We conclude that ACED failed to present substantial evidence showing that APS or MHCA intentionally interfered with ACED’s business relations. Because, as a matter of law, the evidence does not support a finding of intentional interference, the trial court erred in denying the motion for a JML filed by APS and MHCA at the close of all the evidence as to ACED’s intentional-interference-with-business-relations claim and its conspiracy claim. Therefore, those claims should not have been submitted to the jury, and the trial court’s order denying APS’s and MHCA’s motions for a JML is due to be reversed.
We next address whether the trial court should have granted ACED’s motion for a new trial. Because we hold that the trial court erred when it submitted ACED’s two remaining claims to the jury, we further hold that the trial court erred when it granted ACED’s motion for a new trial and reinstated ACED’s breach-of-contract claim.
IV. Conclusion
We reverse the trial court’s order denying APS’s and MHCA’s motions for a JML *716 as to ACED’s intentional-mterference-with-business-relations and conspiracy claims, and we reverse the trial court’s order granting ACED’s motion for a new trial. We remand the cause and direct the trial court to enter a JML in favor of APS and MHCA on ACED’s remaining two counts. Because we conclude that the trial court should have entered a JML as to ACED’s remaining two claims, we preter-mit consideration of the other arguments made by the parties.
REVERSED AND REMANDED.
STUART, BOLIN, PARKER, MURDOCK, SHAW, and BRYAN, JJ., concur.
MOORE, C.J., dissents.
WISE, J., recuses herself.

1. The "Joint Commission” provides nationally recognized accreditation credentials for health-care organizations and programs in the United States.

. "Q. Ms. Miller, what obligates MHCA to do business with your company?
"A. There is no obligation.”