EDITH R. MORRIS, *et al.*

*v.*

WILLIAM F. NEASE

(No. 13721)

Decided November 22, 1977.

*Herbert H. Henderson,* for appellant.

*George A. Mills, III, Greene, Ketchum & Mills,* for appellees.

NEELY, JUSTICE:

In this appeal from the Circuit Court of Cabell County Dr. William F. Nease, a chiropractor, challenges the enforcement against him of restrictive covenants affecting property he owns in Huntington. In 1972 Dr. Nease opened a chiropractic clinic at 2703 Third Avennue, and a number of his neighbors brought suit against him to have the clinic closed. They contended that Dr. Nease's clinic violated applicable restrictive covenants, and the Circuit Court agreed, issuing a permanent injunction

that prohibits Dr. Nease from operating a chiropractic clinic at 2703 Third Avenue. We reverse.

The land owned by Dr. Nease, as well as that owned by the neighbors seeking to enforce the restrictive covenants, was originally developed by the Huntington Land Company in the early 1900s. At that time the following restrictions were imposed:

> "[T]here shall be left an open space or courtyard binding on Third Avenue of not less than forty feet in depth exclusive of porch in front of any building erected on said premises, which space shall extend the entire width of said premises; that there shall not be erected on said premises hereby conveyed more than one single dwelling, and any dwelling erected thereon shall not cost less than three thousand dollars; that there shall not be erected on said premises any building other than for dwelling or residence purposes, or purposes of like nature, and the necessary outbuildings pertaining thereto, nor shall any building erected thereon be used for other than dwelling or residence purposes, or purposes of like nature, and as such outbuildings pertaining thereto; that these covenants and agreements shall run with the land."

It was conceded that all parties to this action, including Dr. Nease, had record notice of these restrictions and took their property subject to the restrictions. Dr. Nease, accordingly, accepts the fact that he is bound by the restrictions to the extent they remain in force, but he argues that the restrictions have been effectively nullified through changes in the character of the neighborhood where his clinic is located. Alternatively, Dr. Nease has raised personal equitable defenses which would prevent the complainants from enforcing the restrictive covenants against him, in the event the Court finds that the covenants remain in force.

## I

West Virginia recognizes the commonly accepted legal proposition that changes in a neighborhood's character

can nullify restrictive covenants affecting neighborhood property. *See, Wallace v. St. Clair*, 147 W. Va. 377 at 397, 127 S.E.2d 742 at 755 (1962). Technically, there is a distinction between changes which occur within the restricted neighborhood itself and changes in the surrounding, unrestricted area. The "problem of *change of conditions* arises where the complainant's and defendant's lots lie within a restricted subdivision, but the area surrounding the restricted subdivision has been so changed by the acts of third persons that the building scheme for the subdivision has been frustrated through no fault of the lot owners themselves." 2 *American Law of Property* 445-446 (A. J. Casner ed. 1952, emphasis added) [hereinafter cited as 2 *American Law of Property*]. When, however, the change in the neighborhood's character is a result of "violations within the subdivision itself, a problem of *abandonment* rather than change of conditions is involved." 2 *American Law of Property* 446 (emphasis added).

Some of the evidence in this case concerns the complainants' own violations of the restrictive covenants. This evidence properly goes to the question of abandonment, since the complainants' property clearly lies within the restricted area. Other evidence concerns non-residential uses of nearby property, some of which may lie within, and some outside, the restricted area. This evidence could show either abandonment or change of conditions, depending on the exact location of the property having the non-residential use. We will consider all the evidence relating to the changing character of the neighborhood here, and we will refrain from drawing technical distinctions between abandonment and change of conditions. Regardless of how it is characterized or labeled, the fundamental issue of this case is the viability of restrictive covenants in a changing neighborhood.

The evidence shows that a substantial amount of commercial property is located a short distance from Dr. Nease's clinic. Twenty-seventh Street, the nearest cross street to his Third Avenue clinic, has a maintenance company, a brokerage company, a repair shop, and a

beauty shop, all within two blocks of Third Avenue. Another beauty shop is located on Twenty-eighth Street within half a block of Third Avenue. The 2800 block of Third Avenue itself has a service station, a laundry, and a church, while the 2600 block has an antique shop, a church, and a ball field.

These properties significantly change the original residential character of the neighborhood. It does not follow, however, that the entire neighborhood is perforce released from the burden of the restrictive covenants. On the contrary, every effort must be exerted to protect the unchanged portions of residential neighborhoods when businesses begin to encroach on the fringes. The obvious danger is that restrictions throughout an entire area can eventually be destroyed through succeeding block-by-block changes in the neighborhood's character:

> "[A]s soon as the border lots are freed, the next tier of lots is put in the same position as that in which the border lots were originally. Thus by a step-by-step process the restrictions must be relaxed until the plan is totally defeated." [2 *American Law of Property* 446]

To guard against such an eventuality courts in a majority of jurisdictions have evolved the rule that "if the benefits of the original plan for a restricted subdivision can still be realized for the protection of interior lots, the restrictions should be enforced against the border lots, notwithstanding the fact that such lot owners are deprived of the most valuable use of their lots." 2 *American Law of Property* 447. West Virginia has adopted the essence of this salutary rule by holding that "changed conditions of the neighborhood will not be sufficient to defeat the right [to enforce restrictive covenants] unless the changes are 'so radical as practically to destroy the essential objects and purposes of the agreement.'" *Wallace v. St. Clair*, 147 W. Va. 377 at 399, 127 S.E.2d 742 at 757 (1962). Based on the evidence thus far discussed, we can say that the non-residential uses of property in the complainants' neighborhood have not destroyed the essential objects and purposes of the restrictive covenants

and that the benefits of the original plan can still be realized for that portion of the neighborhood which retains its residential character. In this respect we note that protection against covenant violations can be afforded to an area as small as one block. *See, Wallace v. St. Clair,* 147 W. Va. 377 at 399, 127 S.E.2d 742 at 756 (1962).

There are additional changes affecting the character of the neighborhood which remain to be considered. These changes have occurred in the block where the complainants reside and the chiropractic clinic is located. On a corner property at one end of the block is the Highlawn United Methodist Church. The evidence shows that the church building was constructed in compliance with neighborhood setback requirments, and with the permission of the property owners in the 2700 block of Third Avenue. The church blends well with the character of the neighborhood; nonetheless, it is a non-residential use. Another change in the neighborhood is the shift in the use of many properties from single-family occupancy to multi-family occupancy, apparently in violation of the applicable restrictive covenants. This change for the most part stems from the conversion into apartment units of garage-stable facilities formerly used by servants or guests. The evidence shows that a number of such apartment units existed in the 2700 block of Third Avenue, and that these units were in various stages of occupancy including unoccupied but available for rent, occupied by extended family members related to the main dwelling's owners, and occupied by unrelated tenants. In addition, at least one main house on the block was divided into two rental units. Despite these significant departures from the neighborhood plan of limiting the occupancy of each lot to single families, the 2700 block of Third Avenue has retained the residential character which was also an important and essential part of the original plan. Even the church, which represents the most drastic change in the block, complements the residential character of the area in a manner that business enterprises do not. Accordingly, we find that the

changes in the neighborhood's character, both in the 2700 block of Third Avenue and in the nearby area, have not been so radical that the restrictive covenants involved here are nullified.

## II

Having found Dr. Nease's arguments concerning the neighborhood's changing character to be unconvincing, we turn now to the personal equitable defenses he raised in this proceeding. The foremost among these defenses is acquiescence, which may be described as follows:

> "The equitable defense of acquiescence arises where the complainant has acquiesced in the violation of the same type of restriction by third parties. Where the complainant has failed to enforce a similar equitable servitude against third parties, he has debarred himself from obtaining equitable relief against the defendant for subsequent violations of the same character. The reason for allowing this defense of acquiescence is the belief that the complainant, by his conduct in failing to seek enforcement against similar violations by third parties, has induced the defendant to assume that the restrictions are no longer in effect. Thus, acquiescence by the complainant to the violations of dissimilar restrictions cannot be a bar to enforcement where the restrictions are essentially different so that abandonment of one would not induce a reasonable person to assume that the other was also abandoned. Likewise, failure to sue for prior breaches by others where the breaches were non-injurious to the complainant cannot be treated as an acquiescence sufficient to bar equitable relief against a more serious and damaging violation." [2 *American Law of Property* 441-442, footnotes omitted]

This defense is recognized in West Virginia. *See* Syl. Pt. 4, *Wallace v. St. Clair*, 147 W. Va. 377, 127 S.E.2d 742 (1962). In analyzing this defense, we must compare Dr. Nease's covenant violations with other violations in the same neighborhood in which the complainants have ac-

quiesced. The violations outside the 2700 block of Third Avenue are too remote to be considered injurious to the complainants' interests. Accordingly, these violations do not provide the basis for the defense of acquiescence. Likewise, the apparent violations in the 2700 block itself, such as the rental of garage apartments and the construction of a church, are not so similar in character to Dr. Nease's clinic, or so injurious to the complainants, that they entitle Dr. Nease to raise the defense of acquiescence. There is one significant violation, however, which we find to be critical to Dr. Nease's defense of acquiescence, namely the use of Dr. Nease's property by his predecessor in title before Dr. Nease established his clinic.

The evidence shows that the property Dr. Nease purchased was divided into five rental units, four in the main structure and one in an outbuilding. There is a very fine line between residential and commercial use in this instance, and Dr. Nease could fairly have assumed that the neighborhood acquiesced in a commercial use of 2703 Third Avenue. This assumption was warranted, we believe, by the fact that in this particular neighborhood the operation of five rental units on one lot is essentially a commercial undertaking. Although the character of Dr. Nease's business differs from that of the preceding business at the same location, the similarites between the businesses are sufficient in our view to entitle Dr. Nease to raise the defense of acquiescence. Both businesses brought added traffic into the neighborhood and resulted in other minor disruptions which are out of the ordinary. Furthermore, it would appear that both businesses resulted in about the same injury to the complainants. In any case it does not seem that the clinic is a significantly more serious and damaging covenant violation than the five-unit rental property.

We can only judge the similarities between Dr. Nease's clinic and the preceding use of the same property on the basis of the record before us. The record indicates that Dr. Nease rehabilitated his property in such a manner that it harmonizes well with other dwellings on the

block. In addition there was testimony that Dr. Nease did not conduct a high-volume practice. Furthermore, the discreet sign which identifies the clinic is placed on the building itself, rather than at the curb, where it would call more attention to the commercial character of the property. In short, Dr. Nease's commercial use of the property appears to be restrained and dignified, and we note that the complainants have acquiesced in only such a use. Should Dr. Nease significantly alter the character of his clinic, or should some other less restrained business move into the property, the complainants would have cause to reexamine the situation and take whatever action they deem appropriate to protect their interests.

We need not consider the other errors assigned by Dr. Nease[1] because our decision with respect to the defense of acquiescence is dispositive of the case. Accordingly, for the foregoing reasons, the judgment of the Circuit Court of Cabell County is reversed.

*Reversed.*

---

[1] Dr. Nease's other assignments of error included the Circuit Court's denial of the defense of laches; the Circuit Court's allegedly improper view of the neighborhood; and, the Circuit Court's denial of the defense of *res judicata*.