Rel: March 24, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

––––––––––––––––––––––––

## SC-2022-0723

––––––––––––––––––––––––

## Trevor Cole

### v.

## Arthur M. Davis, Ronald F. Ham, Patricia G. Hooper, Thomas R. Miller, Sara A. Minor, June Montgomery, Jill Murray, and Debbie Rice

### Appeal from Madison Circuit Court
### (CV-21-900855)

COOK, Justice.

This appeal arises from an action to enforce restrictive covenants

within a subdivision. The plaintiffs are the owners of different lots: Arthur M. Davis, Ronald F. Ham, Patricia G. Hooper, Thomas R. Miller, Sara A. Minor, June Montgomery, Jill Murray, and Debbie Rice ("the lot owners"). They sought an injunction to prevent Trevor Cole from subdividing his lot. The Madison Circuit Court entered a summary judgment in favor of the lot owners and issued the injunction.

On appeal, Cole argues (1) that the restrictive covenants should not be enforced for various equitable reasons (because of the "relative hardship" enforcing the covenants would allegedly impose upon him; because the "character of the neighborhood" has allegedly changed "radically" since the covenants were adopted; and because a majority of the other property owners in the subdivision, including some of the lot owners, have waived enforcement of the covenants), (2) that he should have been provided certain discovery before the entry of the summary judgment, and (3) that necessary or indispensable parties to the action were absent. We reject each of these arguments and affirm.

<u>Facts and Procedural History</u>

Kirkwood Heights ("the subdivision") is a residential subdivision located in Huntsville. The subdivision, like many other subdivisions, has

2

a set of restrictive covenants known as the "Kirkwood Heights Restrictions" ("the Kirkwood Heights covenants"), which dictate what property owners in the subdivision can and cannot do with their property. The Kirkwood Heights covenants provide, in pertinent part:

> "1 -- BUILDING LOCATION: No Building shall be located on any lot nearer to the front lot line or nearer to the side street line than the minimum building setback lines shown on the recorded plat. In any event no building shall be located on any lot nearer than 30 feet to the front lot line, <u>or nearer than 30 feet to the side street line</u> …. No dwelling shall be located on any interior lot nearer than 40 feet to the rear lot line.

> "2 -- LOT AREA AND WIDTH: No dwelling shall be erected or placed on any lot having a <u>width of less than 85 feet</u> at the minimum building setback line, nor shall any dwelling be erected or placed on any lot having <u>an area of less than 11,900 square feet</u>.

> "3 -- LAND USE AND BUILDING TYPE: No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling ….

> "….

> "15 -- TERM: These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of 10 years <u>unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said</u>

covenants in whole or in part.

"16 -- ENFORCEMENT: Enforcement shall be by proceedings at law or in equity against any person or persons violating or <u>attempting</u> to violate any covenant either to <u>restrain violation</u> or to recover damages.

"17 -- SEVERABILITY: Invalidation of any one of these covenants by judgment or court order shall in no wise affect any of the other provisions which shall remain in full force and effect."

(Emphasis added.)

According to the record, in 2016 the owner of a particular lot in the subdivision -- Lot 14 -- requested that the Kirkwood Heights covenants be amended to allow that owner to subdivide the lot. Pursuant to paragraph 15 in those covenants, that owner recorded an "Amendment and Waiver" ("the 2016 waiver") to the Kirkwood Heights covenants in the Madison Probate Court, in which a majority of the property owners in the subdivision, including some of the lot owners, agreed to amend those covenants as follows:

"1. Notwithstanding anything in paragraph 2 [of the Kirkwood Heights covenants] to the contrary, Lot 14, Block 5 may be subdivided and the resulting Lot(s) shall have a width of no less than 60 feet at the minimum building setback line and may have a minimum Lot area of 7,500 square feet.

"2. <u>Except as herein changed, all other restrictions</u>

4

and/or covenants recorded … shall remain in full force and effect."

(Emphasis added.)

In 2018, Cole bought his lot -- Lot 1 -- located in the subdivision. He does not dispute that he had actual knowledge of the Kirkwood Heights covenants. He also claims that he had knowledge of the 2016 waiver and alleges that he relied upon it when purchasing his lot. Despite his knowledge of the Kirkwood Heights covenants, including the lot-size and width restrictions in paragraph 2, Cole submitted to the City of Huntsville a proposed plat in which Cole noted his intention to work with Augustus Homes, LLC, to subdivide his lot into two residential lots. According to Cole, his intent was to build two high-end homes on the subdivided lots and market them to the public. At no point before doing this, however, did Cole attempt to seek an "Amendment and Waiver" to the Kirkwood Heights covenants similar to the 2016 waiver.

On July 8, 2021, the lot owners commenced this action. Attached to their complaint were copies of the following certified documents: (1) the "Kirkwood Heights Subdivision Plat Map"; (2) the Kirkwood Heights covenants; (3) the 2016 waiver; and (4) Cole's deed to his lot.

A few days later, Cole filed his answer, in which he raised various

affirmative defenses, including, among others, the "relative-hardship" defense and waiver. He also filed a counterclaim against the lot owners, asserting tortious interference with his ongoing business relationship with Augustus Homes and civil conspiracy. He did not seek a judgment declaring the validity, scope, or enforceability of the Kirkwood Heights covenants.

Shortly thereafter, Cole served requests for production to the lot owners, along with a deposition notice for each lot owner. In the deposition notices, Cole proposed multiple dates and times, leaving the dates and times subject to negotiation among the parties. It does not appear from the record that the lot owners responded to any of Cole's discovery requests.

Cole also filed a motion pursuant to Rule 19, Ala. R. Civ. P., to require the lot owners to add all the other property owners in the subdivision as necessary or indispensable parties. The trial court denied Cole's motion, and Cole filed a petition for a writ of mandamus with this Court, which we denied. Ex parte Cole (No. 1200828, Sept. 24, 2021). Neither the trial court, nor this Court, granted a stay during the pendency of that mandamus petition.

6

On September 7, 2021, the lot owners filed a motion for a summary judgment in which they argued that there were no genuine issues of material fact in this case because Alabama law is clear that unambiguous restrictive covenants like the ones at issue in this case are enforceable and that an injunction is the appropriate remedy for the breach of such covenants. They further argued that, to the extent that Cole contended that the Kirkwood Heights covenants were unenforceable under either the "relative-hardship" test or the "change-in-the-neighborhood" test, Cole could not demonstrate either that enforcing them would create a relative hardship on him and similar property owners in the subdivision or that the character of the subdivision had changed so drastically that the Kirkwood Heights covenants no longer accomplished their original purpose. Finally, they argued that Cole could not prevail on either his tortious-interference claim or his civil-conspiracy claim because their efforts to enjoin Cole's subdivision of his lot were justified under the law. In support of their motion, the lot owners incorporated by reference the certified copies of the documents that they had attached to their complaint.

Cole timely filed a response in opposition to the summary-judgment

motion and argued that, contrary to the lot owners' contentions, genuine issues of material fact existed as to whether the Kirkwood Heights covenants prevented him from being able to subdivide his lot because a majority of the property owners in the subdivision had previously consented to a waiver of the lot-size and width provisions in paragraph 2 of the Kirkwood Heights covenants in the 2016 waiver and because, he said, there had been a general failure to enforce other covenant violations. Cole further argued that, pursuant to Rule 56(f), Ala. R. Civ. P., summary judgment was inappropriate until he was able to conduct some discovery on the claims alleged by the lot owners. He also argued that the balancing of factors under the relative-hardship test or the change-in-the-neighborhood test weighed against the enforcement of the Kirkwood Heights covenants in this case. Finally, he argued that, without some discovery, the trial court also could not make a determination as to whether genuine issues of material fact existed as to his tortious-interference claim or his civil-conspiracy claim.

In support of his response in opposition to the summary-judgment motion, Cole included, pursuant to Rule 56(f), an affidavit from his trial counsel, Robert Presto, who confirmed that, despite his efforts, the lot

owners had failed to respond to any of Cole's discovery requests. On October 18, 2021 -- three days before the date set for the hearing on the summary-judgment motion -- Cole also filed a motion to compel responses to his discovery requests.

Other than the affidavit of his counsel under Rule 56(f), Cole did not file any evidence in opposition to the summary-judgment motion. However, at the hearing on the motion, he provided several exhibits, including (1) a tax assessor's plat of the entire subdivision, (2) various printouts from the tax assessor's office relating to other property in the subdivision, (3) a petition signed by 108 people claiming to be residents of the subdivision and opposing the subdivision of Cole's lot, (4) a picture of Cole's lot, (5) a notice of violation of the Kirkwood Heights covenants based on trash on Cole's lot, and (6) pictures of signs on other properties in the subdivision. There is no indication in the record that any of those documents were certified by affidavit or otherwise authenticated.

On October 21, 2021, the trial court held a hearing on the summary-judgment motion.[1] The trial court entered a summary judgment in favor

---

[1]A transcript of that hearing was not included in the record on appeal.

of the lot owners on March 16, 2022, enjoining Cole and "his successors and assigns" from subdividing Lot 1 "without adhering to and complying with the procedure(s) set out in the applicable" Kirkwood Heights covenants. The trial court also entered a summary judgment in favor of the lot owners on Cole's tortious-interference and civil-conspiracy claims. Cole appeals.

## Standard of Review

"'"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably

> infer the existence of the fact sought to be proved.'
> West v. Founders Life Assur. Co. of Fla., 547 So.
> 2d 870, 871 (Ala. 1989)."'

"Prince v. Poole, 935 So. 2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004))."

Brown v. W.P. Media, Inc., 17 So. 3d 1167, 1169 (Ala. 2009).

Discussion

Our Court has previously recognized that, as a general matter, "restrictive covenants are not favored in the law and will therefore be strictly construed by this Court." Lange v. Scofield, 567 So. 2d 1299, 1301 (Ala. 1990). "All doubts must be resolved against the restriction and in favor of free and unrestricted use of the property." Id.

However, when the language of a restrictive covenant is not "of doubtful meaning [or] ambiguous," the language of that covenant "is entitled to be given the effect of its plain and manifest meaning." Laney v. Early, 292 Ala. 227, 231-32, 292 So. 2d 103, 107 (1974). "If 'there is no inconsistency or ambiguity within a restrictive covenant, the clear and plain language of the covenant is enforceable by injunctive relief.' " Hipsh v. Graham Creek Estates Owners Ass'n, 927 So. 2d 846, 848 (Ala. Civ. App. 2005) (quoting Carpenter v. Davis, 688 So. 2d 256, 258 (Ala. 1997)).

11

That proposition of law takes precedence over the disfavor that our Court has previously shown toward restrictions of the use of land. Laney, 292 Ala. at 231, 292 So. 2d at 106-07.

In Tubbs v. Brandon, 374 So. 2d 1358, 1361 (Ala. 1979), this Court stated:

> "When a restrictive covenant is broken, … an injunction should be issued because the mere breach of the covenant is a sufficient basis for interference by injunction. The right to enjoin such a breach will not depend upon whether the covenantee will be damaged by the breach. Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915 (1966)."

(Emphasis added.)

In the present case, neither side argues that the Kirkwood Heights covenants are ambiguous. It is also undisputed that Cole's proposed subdivision of his lot violates the Kirkwood Heights covenants in the following ways: (1) it proposes creating 2 lots that would each be approximately 65 feet wide and, thus, would not comply with the minimum 85-foot width per lot set forth in paragraph 2 of the Kirkwood Heights covenants and (2) it proposes creating 2 lots that would each be approximately 9,000 square feet and, thus, would not comply with the minimum square footage of 11,900 square feet per lot set forth in paragraph 2 for the Kirkwood Heights covenants.

Although, as noted earlier, the breach of a restrictive covenant is, by itself, enough to warrant the issuance of an injunction, in <u>Lange</u> this Court stated that enforcement of covenants running with land "'is governed by equitable principles, and will not be decreed if, under the facts of the particular case, it would be inequitable and unjust.'" 567 So. 2d at 1302 (quoting 20 Am. Jur. 2d <u>Covenants, Conditions & Restrictions</u> § 313 (1965)).

Our appellate courts have previously evaluated the enforceability of restrictive covenants like the Kirkwood Heights covenants by applying two independent, alternative equitable tests -- the relative-hardship test and the change-in-the-neighborhood test. This Court, in <u>Lange</u>, created an exception to the holding in <u>Tubbs</u>, providing that when a party opposing the enforceability of a covenant can meet its burden under either of these tests, the covenant should be held unenforceable.

<u>Relative-Hardship Test</u>

If "'the restrictive covenant has ceased to have any beneficial or substantial value'" or "'the defendant will be subject to great hardship or the consequences would be inequitable,'" a court, applying equitable principles, of equity will not enforce the covenant. <u>Id.</u> (citation omitted).

In <u>Lange</u>, this Court explained:

> "'The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial or substantial value to the ... property, it can form no ground for equitable relief. ... [I]f the defendant will be subject to great hardship or the consequences would be inequitable, relief will be denied.'"

<u>Id.</u> (citation omitted). Accordingly,

> "if, upon a balancing of the equities, a court determines that the harm resulting to one landowner from the enforcement of a restrictive covenant would be considerably disproportionate to the benefit received by the landowner seeking enforcement, a court may decline to afford the landowner seeking enforcement the equitable relief of an injunction to redress a breach of the restrictive covenant."

<u>Grove Hill Homeowners' Ass'n v. Rice</u>, 90 So. 3d 731, 737 (Ala. Civ. App. 2011). We note, however, that the relative-hardship defense is an affirmative one, and, thus, the burden is on the party asserting the defense.

The lot owners contend that Cole cannot rely on the relative-hardship test recognized in <u>Lange</u> because Cole had both actual and constructive notice of the particular covenant -- paragraph 2 of the Kirkwood Heights covenants -- that he sought to breach. In support of their argument, the lot owners rely on <u>Maxwell v. Boyd</u>, 66 So. 3d 257

14

(Ala. Civ. App. 2010), wherein the proposition that the relative-hardship test cannot be applied if the covenant violator had <u>actual or constructive notice</u> of the covenant appears to have been adopted by the Court of Civil Appeals.  In that case, the party seeking to invoke the relative-hardship defense had continued to construct a garage in violation of a restrictive covenant, despite having actual notice of the covenant. The Court of Civil Appeals concluded that a party seeking to invoke the relative-hardship test recognized in <u>Lange</u> must have clean hands, and, in applying the clean-hands doctrine, that court held that "a restrictive covenant should be enforced if the defendant had knowledge of it before constructing an improvement contrary to its provisions, even if the harm is disproportionate." 66 So. 3d at 261 (citing <u>Green v. Lawrence</u>, 877 A.2d 1079, 1082 (Me. 2005), citing in turn 9 <u>Powell on Real Property</u> § 60.10(3).

The Court of Civil Appeals has repeatedly upheld this proposition. <u>See, e.g.</u>, <u>Grove Hill</u>, 90 So. 3d at 739 (recognizing that the relative-hardship test cannot be invoked by one who had notice of a restrictive covenant "to avoid the consequences of [a] breach" of that covenant); and <u>Heaven's Gate Ministries Int'l, Inc. v. Nejad</u>, 329 So. 3d 643 (Ala. Civ. App. 2020) (holding that a defendant who had violated a restrictive

15

covenant of which the defendant had constructive notice was not entitled to a balancing of the equities or to the benefit of the relative-hardship test).

Cole does not deny that he had actual, let alone constructive, knowledge of the lot-size and width requirements in paragraph 2 of the Kirkwood Heights covenants. Thus, under the legal principles discussed above, he would not be entitled to the benefit of the relative-hardship test.

However, this Court has not developed or applied a hard and fast rule preventing a party from relying on the relative-hardship defense in situations in which that party violated a covenant of which it had notice. Instead, a party's knowledge -- constructive or actual -- of a restrictive covenant should simply be one factor for a trial court's consideration in determining whether the resultant harm from enforcement of a restrictive covenant "would be considerably disproportionate to the benefit received by the landowner seeking enforcement" of the covenant. Grove Hill, 90 So. 3d at 737. See, e.g., id. at 742 (Bryan, J., dissenting)("I would hold that a trial court should consider a party's knowledge of a restrictive covenant as a factor in applying the relative-hardship test

16

rather than holding that such knowledge precludes the application of the test."). Indeed, under virtually every circumstance, a property owner would have at least constructive notice of a recorded restrictive covenant, and thus the bright-line rule adopted by the Court of Civil appeals would read the relative-hardship defense out of existence.

We will therefore proceed to apply the relative-hardship test. Here, Cole did not provide the trial court with any admissible evidence indicating that the harm from enforcing the Kirkwood Heights covenants would be "considerably disproportionate to the benefit received by" the lot owners. For instance, he has presented no evidence as to whether it would be feasible for him to build and market a new house while complying with the lot-size and width requirements in paragraph 2 of the Kirkwood Heights covenants or as to what financial impact complying with those covenants might have on him. Likewise, he has presented no evidence regarding whether other property owners in the subdivision would be helped or hurt by enforcing the Kirkwood Heights covenants (for instance, valuation testimony) or whether there would be any other

17

significant impacts resulting from the enforcement of those covenants.[2]

Under these circumstances, Cole has failed to meet his burden and, thus, has not demonstrated that he is entitled to relief under the relative-hardship test.

"Change-in-the-Neighborhood" Test

Next, Cole argues that he should be relieved from having to comply with the Kirkwood Heights covenants based on the application of the "change-in-the-neighborhood" test. Because the subdivision of Lot 14 in 2016 was made with the approval of a majority of the property owners in the subdivision, including some of the present lot owners, and because, Cole says, the apparent acquiescence to "numerous other violations of the … Covenant provisions" by the other property owners in the subdivision demonstrates that the neighborhood (i.e., the subdivision) has changed so radically that the original purpose of the Kirkwood Heights covenants, which were first approved in 1957, can no longer be accomplished, Cole contends that he is entitled to relief from the enforcement of the Kirkwood Heights covenants.

---

[2]Compare Lange v. Scofield, 567 So. 2d 1299, 1302 (Ala. 1990) (noting that "there was ample evidence that [the plaintiff's lot] would be almost without value if the covenants are enforced" (emphasis added)).

Under the change-in-the-neighborhood test, "a restrictive covenant will not be enforced if the character of the neighborhood has changed so radically that the original purpose of the covenant can no longer be accomplished." AmSouth Bank, N.A. v. British W. Florida, L.L.C., 988 So. 2d 545, 550 (Ala. Civ. App. 2007). This Court has recently stated:

> "'"A change in character of the neighborhood sufficient to defeat a restrictive covenant must have been so great as to clearly neutralize the benefits of the restriction to the point of defeating the object and purpose of the covenant."' Laney [v. Early], 292 Ala. [227,] 233, 292 So. 2d [103,] 108 [(1974)] (quoting Thompson on Real Property § 3174, p. 20 (1972 Supp.)). Such a change in the nature and condition of the neighborhood 'must be determined based on a comparison of its present character with its character when the restrictive covenants were created ....' AmSouth Bank[, N.A. v. British W. Florida, L.L.C.], 988 So. 2d [545,] 551 [(Ala. Civ. App. 2007)]. When the original purposes of the covenants can be effectuated, changes outside the restricted area should not be allowed to defeat the purposes of the restriction. Laney, 292 Ala. at 233, 292 So. 2d at 108 (citing Centers, Inc. v. Gilliland, 285 Ala. 593, 596, 234 So. 2d 883, 886 (1970)). The burden of proof is on the party seeking to remove the restrictive covenants pursuant to the 'change-in-the-neighborhood' test. Laney, supra."

Capitol Farmers Mkt., Inc. v. Ingram, [Ms. 1200688, Dec. 3, 2021] ____ So. 3d ____, ____ (Ala. 2021).

To illustrate, in AmSouth Bank, supra, the Court of Civil Appeals

19

upheld a trial court's decision to abandon the restrictive covenants at issue under the "change-in-the-neighborhood" test. After comparing the neighborhood in its modern state to its state when the restrictive covenants were first created, the trial court concluded that the neighborhood had radically changed and, therefore, that a covenant requiring only single-family homes could not be enforced. The evidence indicated that the neighborhood originally consisted of a single bait shop and single-family dwellings surrounded by vacant land. At the time of the litigation, however, the neighborhood was dominated by high-rise condominiums and hotels and had become a highly populated resort area along the Gulf Coast. In upholding the trial court's decision not to enforce the restrictive covenants, the Court of Civil Appeals noted that the evidence clearly indicated that a "radical" change in the neighborhood had occurred and that it was a fundamentally different place, used for different purposes, with a fundamentally different density.

In the present case, Cole alleges that the subdivision has radically changed since it was originally established in 1957 such that the object and purpose of the Kirkwood Heights covenants can no longer be met. In support of his contention, Cole notes that the majority of the property

owners in the subdivision, including some of the lot owners, formally waived the lot-size and width provisions in paragraph 2 of the Kirkwood Heights covenants when they signed the 2016 waiver. He also points to the fact that several lots in the subdivision have encroached upon various required setbacks mandated by the Kirkwood Heights covenants. Finally, he notes that a "commercial" lawnmower-repair business is being run out of at least one house in the subdivision, which, he says, is a direct violation of the Kirkwood Heights covenants.

None of the alleged violations of the Kirkwood Heights covenants claimed by Cole indicate that the subdivision has undergone such a radical change since its inception that enforcing those covenants in this case would be improper. The evidence indicates that there is only 1 subdivided lot among the 52 lots that are subject to the Kirkwood Heights covenants.[3] The admissible evidence demonstrates only that the

---

[3]The lot owners claim that only 52 lots are subject to the Kirkwood Heights covenants and that many of the "violations" Cole cites do not involve lots covered by those covenants. In support of their contention, they cite the plat that is attached as an exhibit to their complaint and that is verified by an affidavit from the Probate Court, which states that it is a "true, correct and complete" copy. (Emphasis added.) Cole disputes this contention and produced a plat at the summary-judgment hearing that purports to be from the county tax assessor's office and that indicates that 148 lots are part of the subdivision. However, that plat was not

subdivision as a whole remains a residential neighborhood with single-family homes. We cannot say that the change in the character of the subdivision is "'so great as to clearly neutralize the benefits of the restriction to the point of defeating the object and purpose of the covenant.'" Laney, 292 Ala. at 233, 292 So. 2d at 108 (quoting Thompson on Real Property § 3174 (1972 Supp.)). Thus, Cole has failed to meet his burden establishing that application of the change-in-the-neighborhood test prevents the enforcement of Kirkwood Heights covenants in this case.

## Rule 56(f) Affidavit

Cole contends that he is entitled to relief because, he says, the trial court prematurely entered a summary judgment in this case without first affording him an opportunity to conduct discovery. Relying on Rule 56(f), Ala. R. Civ. P., Cole contends that the trial court had an obligation to deny or withhold a ruling on the lot owners' motion for a summary judgment until they responded to his prior discovery requests.[4]

---

certified by an affidavit. Even more importantly, the tax assessor's map does not (and cannot) speak to whether all the lots depicted in the tax assessor's plat are subject to the same set of restrictive covenants.

[4]We note that Cole also contends that the lot owners violated Rule

Rule 56(f) provides:

"Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Here, Cole filed such an affidavit from his trial counsel, Robert Presto.

Although Presto's affidavit identified the discovery requests that had previously been issued -- i.e., the requests for production and the deposition notices -- it did not explain how the evidence sought by those requests would be relevant. Instead, he merely parroted the language from Rule 56(f): "[T]his affidavit confirms that I cannot at this time present by affidavit or by discovery materials the facts that are necessary to justify our opposition to the [lot owners'] Motion seeking summary

_____

56(c)(1), Ala. R. Civ. P., because, he says, they failed to include a "narrative summary of what the movant contends to be the undisputed material facts." This is not true. The lot owners included a fact section, with citations to admissible evidence, in their summary-judgment motion. Although this Court has never addressed how strictly to enforce Rule 56(c)(1), the caselaw on which Cole relies in support of his contention -- Tucker v. Morgan, 833 So. 2d 68, 72 (Ala. Civ. App. 2002) -- involved an extreme failure by the movant and is, therefore, unpersuasive.

23

judgment."

The law is clear that the nonmoving party bears the burden to demonstrate to the trial court that the evidence sought in opposition to a summary-judgment motion is <u>critical to its case</u>. <u>See</u> <u>Diamond v. Aronov</u>, 621 So. 2d 263, 265 (Ala. 1993). "'"[W]hen no such <u>crucial evidence</u> would be supplied [by discovery] it is not error for the trial court to grant summary judgment with discovery pending."'" <u>Id.</u> at 266 (citations omitted; emphasis added).

In short, it is Cole's burden under Rule 56(f) to demonstrate that the evidence sought by his discovery requests is "crucial" -- not merely that he has issued discovery requests. Conclusory statements are not enough.[5]

<u>Waiver or Acquiescence</u>

---

[5]It is also clear that at least some (perhaps most) of the relevant evidence as to the relative-hardship defense was within Cole's own control. Cole could have provided evidence relating to the hardship <u>imposed upon him</u> by enforcement of the Kirkwood Heights covenants, expert or third-party testimony regarding the lack of substantial benefit enforcing those covenants would provide to the lot owners, or affidavit testimony addressing the alleged covenant violations in the subdivision. For instance, Cole claims in his brief that he "easily recognized the multiple Covenant violations." Cole's brief at 53. Nonetheless, he presented no admissible evidence of such multiple "easily recognized" violations.

Cole also argues that there is a fact question as to whether the "Lot Owners, and all of the other owners of lots within the Subdivision, had effectively waived and abandoned the Covenants." Cole appears to make two types of waiver arguments.

First, Cole appears to argue that the 2016 waiver somehow waived the lot-size and width requirements in paragraph 2 the Kirkwood Heights covenants. To the extent that he is making such an argument, the plain language of the 2016 waiver is exactly to the contrary. The 2016 waiver applies to one lot and states: "Lot 14 … may be subdivided …. Except as herein changed, all other restrictions and/or covenants as recorded … shall remain in full force and effect." (Emphasis added.) Furthermore, the 2016 waiver acknowledged and complied with the process for formal amendment of the Kirkwood Heights covenants.

Next, Cole argues that the existence of the 2016 waiver -- combined with the alleged repeated violations of the setback requirements (and the operation of the alleged lawnmower-repair business) -- evidences a waiver and/or acquiescence of all the Kirkwood Heights covenants by all the property owners in the subdivision. In short, he contends that nobody cares anymore about the Kirkwood Heights covenants, as evidenced by

the pervasiveness of the violations.

The first problem with this argument is that Cole cites no Alabama cases that have recognized waiver or acquiescence as a defense to the enforcement of restrictive covenants. Instead, he cites cases from other jurisdictions -- Morris v. Nease, 160 W. Va. 774, 238 S.E.2d 844 (1977), McColm v. Stegman, 3 Kan. App. 2d 416, 596 P.2d 167 (1979), and Alfaro v. Community Housing Improvement System & Planning Assn., 71 Cal. App. 4th 1356, 1364, 124 Cal. Rptr. 3d 271, 280 (2009). We note, however, that these out-of-state cases apply waiver narrowly and could be read to support the lot owners. For instance, the court in Alfaro refused to find waiver, holding that "[a] nebulous allegation that 'several' of [the defendant lot owners are in violation] is clearly insufficient to establish that [they] have generally waived their right to enforce the restrictive covenant." 171 Cal. App. 4th at 1380, 124 Cal. Rptr. 3d at 293. Likewise, in McColm, the Kansas Court of Appeals refused to find waiver, and in Morris, the Supreme Court of Appeals of West Virginia rejected a number of waiver arguments because the violations allegedly supporting waiver were "not so similar in character." Morris, 160 W. Va. at 780, 238 S.E.2d at 848. Thus, they do not support Cole's argument here.

There is also Alabama precedent that could be interpreted to the contrary of these out-of-state cases. For instance, this Court stated in Tubbs v. Brandon, 374 So. 2d 1358, 1360 (Ala. 1979), that we would follow "the general rule that restrictive covenants in a deed <u>will be enforced even though other owners of lots in the subdivision have violated the restrictions without objection</u>." (Emphasis added.) Moreover, in general, Alabama recognizes the need for certainty when dealing with real property; it is generally an important public policy that recorded real-property documents accurately provide at least inquiry notice to the public of the legal status of real property. Thus, we would hesitate before recognizing any blanket doctrine that might weaken such certainty.

However, we need not decide today whether some set of compelling facts might merit a limited application of waiver or acquiescence in the restrictive-covenant context, because the evidence does not support Cole's waiver arguments here. The 2016 waiver actually proves the opposite of generalized acquiescence. The owner of Lot 14 followed the procedures set forth in the Kirkwood Heights covenants to obtain the 2016 waiver, and the property owners who consented to the 2016 waiver followed the procedures prescribed by those covenants. The actions of all

27

of those persons showed compliance with the Kirkwood Heights covenants -- not a blanket acquiescence in violation of those covenants. Regarding the other alleged violations, Cole has provided no admissible evidence. Further, those other alleged violations concern provisions of the Kirkwood Heights covenants other than the provisions regarding width and lot size (that is, they do not involve the "'same type of restriction'"). Morris, 160 W.Va. at 780, 238 S.E.2d at 848 (quoting 2 American Law of Property 441-42 (A.I.Casner ed., 1952)). Thus, under these circumstances, Cole has failed to show that he is entitled to relief.

### Rule 19 -- Are The Owners of Other Lots Necessary or Indispensable Parties?

Next, Cole argues that the trial court erred when it refused to require the lot owners to join all of the other property owners in the subdivision as necessary or indispensable parties. According to Cole, this would presumably add at least 140 more parties to this action.

Rule 19(a), Ala. R. Civ. P., provides:

"A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest

28

or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action."

This Court has previously explained the following with regard to the difference between "necessary parties" and "indispensable parties":

"'"Indispensable parties" are persons who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. <u>Bennie v. Pastor</u>, C.A.N.M. 1968, 393 F.2d 1 [10th Cir. 1968].

"'".…

"'"Necessary parties" are those affected by the judgment and against which in fact it will operate. <u>West Coast Exploration Co. v. McKay</u>, 1954, 93 U.S. App. D.C. 307, 213 F.2d 582, certiorari denied, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123.'"

<u>Frander & Frander, Inc. v. Griffen</u>, 457 So. 2d 375, 377 (Ala. 1984) (quoting 1 Champ Lyons, <u>Alabama Practice, Rules of Civil Procedure</u> 389 (1973)). "There is no prescribed formula to be mechanically applied in every case to determine whether a party is an indispensable party or

29

merely a proper or necessary one. This is a question to be decided in the context of the particular case." J.R. McClenney & Son, Inc. v. Reimer, 435 So. 2d 50, 52 (Ala. 1983).

In Capitol Farmers Market, Inc. v. Delongchamp, 320 So. 3d 574, 579 (Ala. 2020), this Court recently stated the following regarding the process provided in Rule 19:

"'Rule 19, [Ala.] R. Civ. P., provides a two-step process for the trial court to follow in determining whether a party is necessary or indispensable. Ross v. Luton, 456 So. 2d 249, 256 (Ala. 1984), citing Note, Rule 19 in Alabama, 33 Ala. L. Rev. 439, 446 (1982). First, the court must determine whether the absentee is one who should be joined if feasible under subdivision (a). If the court determines that the absentee should be joined but cannot be made a party, the provisions of [subdivision] (b) are used to determine whether an action can proceed in the absence of such a person. Loving v. Wilson, 494 So. 2d 68 (Ala. 1986); Ross v. Luton, 456 So. 2d 249 (Ala. 1984). It is the plaintiff's duty under this rule to join as a party anyone required to be joined. J.C. Jacobs Banking Co. v. Campbell, 406 So. 2d 834 (Ala. 1981).'"

(Quoting Holland v. City of Alabaster, 566 So. 2d 224, 226 (Ala. 1990).) "The purposes of Rule 19 'include the promotion of judicial efficiency and the final determination of litigation by including all parties directly interested in the controversy.'" City of Gadsden v. Boman, 104 So. 3d 882, 887 (Ala. 2012) (quoting Byrd Cos. v. Smith, 591 So. 2d 844, 846 (Ala. 1991)). "This Court will not disturb a trial court's Rule 19[, Ala. R. Civ.

30

P.,] determination unless it exceeded its discretion, because such a determination is based on equitable and pragmatic considerations."

Toomey v. Riverside RV Resort, LLC, 328 So. 3d 228, 232 (Ala. 2020)

Here, the sole claim in the complaint is for a permanent injunction to enforce the plain language of the Kirkwood Heights covenants against Cole. The trial court's entry of a summary judgment had no effect on other property owners' legal or equitable interests in their real property that is subject to the Kirkwood Heights covenants. All the issues before the trial court center on whether Cole's lot is subject to those covenants and, if so, whether Cole's proposed subdivision of his lot violates those covenants, thereby warranting the issuance of an injunction. The permanent injunction issued by the trial court in this case is narrowly tailored to Cole's lot.

Cole contends, however, that he may be faced with the risk of another injunction because all the property owners in the subdivision were not joined in the litigation under Rule 19. He also argues that if he were to defeat the lot owners' claims based upon his affirmative defenses, the interests of the other property owners in the subdivision would be affected. In support of his contention, Cole relies on this Court's prior

31

decisions in <u>Withington v. Cloud</u>, 522 So. 2d 263 (Ala. 1988), and <u>Delongchamp</u>, <u>supra</u>.

First and foremost, as explained previously in this opinion, the Kirkwood Heights covenants clearly provide the parameters for lot size and width in the subdivision, and it is undisputed that the parameters of Cole's proposed subdivisions of his lot violate those provisions. Because the proposed subdivision of his lot would breach the Kirkwood Heights covenants and because he failed to establish that those covenants were unenforceable, neither of his arguments as to impact on other property owners in the subdivision can come to pass. The Kirkwood Heights covenants will remain in effect for everyone in the subdivision and the injunction will bar only him from violating those covenants.

Further, the present case is distinguishable from <u>Withington</u>, <u>supra</u>, and <u>Delongchamp</u>, <u>supra</u>. Here, the lot owners sought only an injunction against one property owner, and their injunction sought only to enforce the original, plain meaning of the Kirkwood Heights covenants. In both <u>Withington</u> and <u>Delongchamp</u>, the plaintiff was seeking to <u>change</u> the application of the pertinent restrictive covenants. For instance, in <u>Withington</u>, the plaintiffs were "seeking a judgment

32

declaring that they should be allowed to subdivide their lot" despite the existence of a covenant prohibiting subdivision, and the defendant countered by claiming (successfully) that "the other owners of property [in the subdivision] are indispensable parties." 522 So. 2d at 263. Thus, in Withington, a judgment in favor of the plaintiffs would have impacted other property owners subject to those covenants.  Here, the lot owners were not seeking to change anything.

The interpretation of Rule 19 that Cole is requesting would make the enforcement of restrictive covenants in subdivisions, like the ones at issue here, virtually impossible and prohibitively expensive. Such a rule would effectively strip property owners of the benefits of the covenants that were part of the bargain when they purchased their property.

Moreover, Cole could have sought a judgment declaring, for example, that there had been a waiver of the Kirkwood Heights covenants or a change in character of the neighborhood.  If Cole had pleaded such a declaratory-judgment claim, he could have added the remaining property owners in the subdivision as additional parties to his counterclaim under Rule 13(h), Ala. R. Civ. P. ("Persons other than those made parties to the original action may be made parties to a counterclaim

or cross-claim in accordance with the provisions of Rule 19 and 20[, Ala. R. Civ. P.]." (emphasis added)). Under these circumstances, Cole has failed to establish that the trial court erred in denying his request to order the lot owners to add additional parties.

Other Claims

Finally, Cole argues that the trial court erred in entering a summary judgment in favor of the lot owners on his tortious- interference and civil-conspiracy claims.

To succeed on his tortious-interference claim, Cole was required to show (1) a protectable business interest; (2) of which the lot owners were aware; (3) to which the lot owners were strangers; (4) with which the lot owners interfered; and (5) thereby damaged Cole. Alabama Psychiatric Servs., P.C. v. A Ctr. for Eating Disorders, L.L.C., 148 So. 3d 708, 714 (Ala. 2014). Here, Cole has failed to demonstrate that he had a protectable business interest with Augustus Homes. As established previously in this opinion, Cole's attempt to subdivide his lot to build two residential homes constituted a breach of the Kirkwood Heights covenants. In other words, Cole did not have a "protectable" interest in subdividing the lot, and the lot owners were justified in bringing their

34

complaint. See generally Gross v. Lowder Realty Better Homes & Gardens, 494 So. 2d 590 (Ala. 1986).

With regard to Cole's civil-conspiracy claim, it is settled law in Alabama that a civil-conspiracy claim cannot stand alone; a civil-conspiracy claim "'must have a viable underlying cause of action.'" Alabama Psychiatric Servs., 148 So. 3d at 715 (quoting Drill Parts & Serv. Co. v. Joy Mfg. Co., 619 So. 2d 1280, 1290 (Ala. 1993)). Because Cole asserts no other viable claims in this action, the trial court properly entered a summary judgment in favor of the lot owners on Cole's civil-conspiracy claim.

## Conclusion

For the reasons set forth in this opinion, the trial court's judgment is affirmed.

AFFIRMED.

Parker, C.J., and Wise, Bryan, Sellers, Stewart, and Mitchell, JJ., concur.

Shaw and Mendheim, JJ., concur in the result.